## DYER *against* SMITH.

What are the laws of another state, is a question of fact, to be proved, like other facts, to the jury.

The construction given to a statute of another state, by usage, as well as by judicial decisions, in that state, is a part of its unwritten law, and as such, may be proved by parol testimony.

Where a counsellor at law and a justice of peace in another state, who had been many years in practice, testified what had been the practical construction of a statute regarding justice's courts; it was held, that this was legitimate evidence for the jury to consider, in determining what was the law of that state upon the point in question.

Where the plaintiff claimed, that a certain note in his favour against *A* was, at a particular time, in the hands of *B*, and offered testimony to prove this fact, without producing the note, or accounting for its non-production; it was held, that such testimony was admissible.

Where a justice of the peace, being the owner of a promissory note, payable to *A* or bearer, instituted a suit upon it, in the name of *B* as bearer, against the maker, returnable before himself; rendered judgment against the de-

fendant, by default; issued execution thereon, and caused him to be arrest-ed and committed to gaol; such justice knowing, at the time of these proceedings, that he was owner, and acting therein to collect his own debt; it was held, that he was liable in trespass for such arrest and imprisonment. Where a justice of the peace rendered judgment, by default, in a suit before him, after the expiration of the time within which he was by law authorized to render such judgment, without giving the defendant in such suit any notice of the time of rendering it, and caused him to be arrested and committed to gaol, by virtue of an execution issued on such judgment; it was held, that after the time limited had expired, the suit became discontinued, the justice's power over it was at an end, and the subsequent proceedings were *coram non judice;* and consequently, he was liable in trespass for such arrest and imprisonment.

*Windham,*
July, 1837.

Dyer
*v.*
Smith.

THIS was an action of trespass for false imprisonment; tried at *Brooklyn, January* term, 1837, before *Waite,* J.

The plaintiff claimed and offered evidence to prove, that the defendant, being a justice of the peace of the state of *Rhode-Island,* issued a writ against the plaintiff, upon a promissory note for the sum of five dollars, payable to *William Smith,* or bearer, in the name of one *Hawkins,* as the bearer, returnable before the defendant, as such justice of the peace, at his dwelling-house in *Gloucester,* in that state, on a certain day, at one o'clock in the afternoon; which writ was duly served upon the plaintiff and returned to the defendant; that by the laws of the state of *Rhode-Island,* a justice could not render any legal judgment in a suit brought before him, unless at the place specified in the writ for holding the court, and also at the time specified for holding the court, or within one hour thereafter, without giving due notice to the parties of his intention to hold his court at some other time or place; that the plaintiff attended at the defendant's dwelling-house at one o'clock in the afternoon of the day appointed for the holding of the court, and there remained for more than one hour, but the defendant did not attend, having left home in the forenoon and gone to *Chepachet,* a distance of three or four miles, where he remained until evening; that on his return, in the evening of the same day, he rendered judgment against the plaintiff in his absence, upon default, without having given him any other notice than what was contained in the writ; that the defendant afterwards issued an execution upon this judgment, and caused the plaintiff to be arrested and committed to gaol, there to be detained until he

*Windham,*
*July, 1837.*

Dyer
*v.*
Smith.

should satisfy the judgment and costs of commitment. The plaintiff produced authenticated copies of the defendant's record, shewing such service, judgment, execution, arrest and commitment.

To prove that the law of the state of *Rhode-Island* in relation to the time of holding justice courts, was as the plaintiff claimed, he, after having introduced the statute law of that state, requiring the time and place for holding such courts to be inserted in the writ, and prescribing the form of justice writs, in which the day, hour and place of holding the court were specified, offered the deposition of *Thomas F. Carpenter*, Esq. of *Providence*, an attorney and counsellor at law ; in which he stated : That there was not, to his knowledge, any definite statute of the state of *Rhode-Island* in relation to the jurisdiction of a justice of the peace over a cause after the hour appointed in the writ for the trial has expired ; and he did not recollect any decisions of the higher courts of the state on the subject. The act prescribing the forms of writs and the manner of serving them, contains the form of a justice's writ ; which form requires the writ to contain the place, the day and *hour* of the day for holding the court. He was formerly a justice of the peace in the city of *Providence*, for several years ; and during the first ten years of his professional practice, he was in the habit of attending justice's courts as counsel ; and during all that time, and at all other times, so far as his knowledge extended, the practice had been invariable (unless varied by the agreement of all the parties interested) to allow one hour from the hour appointed in the writ for the justice and the parties to appear at the place appointed. If, during that hour, the justice did not appear, the whole proceedings were considered to be ended, and the plaintiff was obliged to begin *de novo.* If the justice were present, and the plaintiff or defendant did not appear during the hour, a non-suit or default was entered at the expiration of the hour, if no cause was shewn to the justice, or existed within his knowledge, why such entry should not be made. Such he believed to be the law of that state, growing out of a long and well settled usage. To the admission of this evidence the defendant objected ; but the court admitted it.

The plaintiff claimed to have proved, that the note on which the suit was brought, was obtained from him fraudulently, and

*Windham,*
July, 1837.

Dyer
*v.*
Smith.

was made under the following circumstances. *William Smith*, with intent to defraud the plaintiff, made a certain note payable to him, and placed it in the hands of one *Cady*, without the plaintiff's knowledge. *Smith* then told the plaintiff, at the defendant's house, that he, the plaintiff, had a note against him, *Smith;* which the plaintiff denied; and thereupon *Smith* proposed to bet five dollars with the plaintiff, that the plaintiff held such note; to which the plaintiff assented. The defendant then wrote the note in question, which was signed by the plaintiff, and another note for the same amount, payable to the plaintiff, which was signed by *Smith*. These notes the plaintiff and *Smith* lodged in the hands of the defendant, until the bet should be determined. They then went to *Cady's* house; and *Cady* shewed the plaintiff the note so placed in his hands. On their return to the defendant's house, *Smith* claimed, that he had won the bet; and the defendant so decided, and delivered over to *Smith* the note signed by the plaintiff. This note was afterwards transferred to the defendant, who became the sole owner of it, with knowledge of all these facts. The defendant then caused a suit upon it to be instituted and prosecuted for his own benefit, but in the name of *Hawkins*, who never had any interest in it, and had never given any authority to bring the suit.

In the progress of the trial, *Cady*, having been introduced as a witness, by the plaintiff, was asked whether the plaintiff and *Smith* did not call upon him to enquire about the note placed in his hands; and he in his answer, being about to state the amount of that note, the defendant's counsel objected to his giving any testimony respecting the contents of the note, unless it was produced. The note was not in the possession of the witness, and no evidence was given to shew where it was. The court permitted the witness to state, that when the enquiry was made of him, by the plaintiff and *Smith*, he held in his hands a note signed by *Smith*, payable to the plaintiff.

The defendant admitted the rendition of the judgment, the issuing of the execution and the arrest and commitment of the plaintiff; but he denied that he was owner of the note, and claimed, that he had duly and legally rendered judgment, at the time and place appointed for holding the court. He also claimed, and prayed the court to instruct the jury, that if the judgment was rendered upon default of appearance of the de-

*Windham,*
July, 1837.

Dyer
*v.*
Smith.

fendant in that suit, at the time and place of holding the court, even should they find that the justice was the owner of the note, the judgment was not void, and he would not be liable as a trespasser, for issuing the execution, and causing the arrest and commitment complained of.   The court did not so instruct the jury, but told them, that if the defendant, at the time when he issued the writ and rendered the judgment, was the sole owner of the note, and knowing himself to be such owner, instituted the suit and rendered the judgment, with the intent and for the purpose of collecting his own debt, in the name of another person, who had no interest in the note, he was liable in this action, for having caused the plaintiff to be arrested and committed to gaol upon an execution issued on that judgment. And if the defendant was not such owner of the note, but rendered judgment in the suit on it against the plaintiff, for default of appearance, after the expiration of the time, when, by the laws of the state of *Rhode-Island*, he was authorized to render such judgment, and without giving the plaintiff any notice of the time of rendering it, he was also liable, in this action, for the arrest and commitment.   But if the jury should find, that the defendant was not such owner, and rendered the judgment against the plaintiff within the time, when, by the laws of the state of *Rhode-Island*, he was authorized to render it, it would be their duty to return a verdict for the defendant.

The jury found for the plaintiff; and the defendant moved for a new trial, for the admission of improper testimony and for a misdirection.

*Strong*, in support of the motion, contended, I. That the deposition of *Carpenter* was improperly admitted.   Its effect was, not to prove the unwritten law of *Rhode-Island*, but to *give a construction* to a *statute* of that state, prescribing the forms of writs; and this, not from the judicial decisions in that state—for the witness says, he knows of none by the higher courts—but from his own practice.

2. That *Cady* should not have been permitted to testify as to the contents of the note, which had been placed in his hands, without its being produced, or its non-production accounted for. He could identify the note to the jury, only by recurring to its contents; of which the note itself was the best evidence.

3. That the defendant's being the owner of the note on which the suit was brought, did not of course render the judg-

ment void, and make him a trespasser. On the face of the proceedings the court had jurisdiction. There was no objection to the court: it was a proper one to try such a cause: but, by reason of an extraneous fact, the person holding the court was disqualified to act. This was a ground of *error in fact ;* the judgment was erroneous, and liable to be reversed ; but was it absolutely void ? Suppose one of the parties to a cause is a corporation—a bank or an insurance company—and the judge before whom that cause is brought, is a brother by marriage, or the landlord, or the tenant of one of the stockholders ; no objection is interposed, and judgment is rendered by default ; that judgment may be erroneous; but is it void, and is the judge a trespasser ? The *science* of the justice in this case makes no difference. This is not the test of jurisdiction.

*Goddard,* contra, contended, 1. That the decision of the judge regarding *Carpenter's* deposition, was correct. It was not offered to prove a statute of *Rhode-Island,* nor the witness's construction of a statute ; but there being no definite statute upon the subject, a counsellor at law, of that state, was called upon to say, what was the law—*i. e.* the unwritten law—in relation to the jurisdiction of a justice of the peace over a cause after the hour appointed in the writ for trial has expired. This question the witness answers directly, and states his means of information. That the unwritten law of another state is to be proved as a fact, and in the same way as any other fact, is well settled. 2 *Stark. Ev.* 568. 3 *Esp. Rep.* 60. n. 2. by *Day.* 1 *Phil. Ev.* 331. n. by *Dunlap. Male* v. *Roberts,* 3 *Esp. Rep.* 164. *Ganer* v. *Lady Lanesborough, Peake's Ca.* 18. *Church* v. *Hubbard,* 2 *Cranch* 187. 336, 7. *Brackett* v. *Norton,* 4 *Conn. Rep.* 518. 521,

2. That *Cady's* testimony was properly admitted. This was not a case of secondary evidence. The question put to the witness was, whether he had in his hands a certain note in the plaintiff's favour against *Smith,* at the time he was enquired of respecting it ; and he was permitted to say that he had ; and this was the only fact he testified to. He was not called upon to say, nor did he say, any thing about its contents. The amount of the note was of no importance.

3. That a judgment rendered by a man in his own cause, knowing it to be such, is void, utterly void.

*Windham,*
July, 1837.

Dyer
*v.*
Smith.

WAITE, J. The defendant in this case was a justice of the peace in the state of *Rhode-Island*, and as such, had rendered judgment, by default, against the plaintiff, issued an execution upon that judgment, and caused him to be committed to gaol. The plaintiff claimed, that that judgment was rendered after the suit had been discontinued, and consequently, was invalid, and afforded no protection to the plaintiff's demand. The validity of that judgment depended entirely upon the laws of the state of *Rhode-Island,* where it was rendered. So long as the defendant, in the discharge of his official duties, acted in conformity with those laws, he was entitled to protection. What those laws were, was a question of fact to be proved before the jury; and the courts of this state could not take judicial notice of them. In this particular, the laws of one state in the *Union,* with respect to another state, are placed upon the same ground as the laws of a foreign state. Whenever they are brought in question, they must, in both instances, be proved as other facts. *Brackett* v. *Norton,* 4 *Conn. Rep.* 518. 521. *Hempstead* v. *Reed,* 6 *Conn. Rep.* 486. *Talbot* v. *Seeman,* 1 *Cranch,* 1. 38. *Consequa* v. *Willing,* 1 *Pet. C. C. Rep.* 225. 229. *Church* v. *Hubbard,* 2 *Cranch,* 187. *Brush* v. *Scribner,* 11 *Conn. Rep.* 407.

It appeared from the defendant's record, that the time appointed in the writ for holding the court, was one o'clock in the afternoon. The statutes of that state were produced in evidence; and from them it appeared, that the time and place for holding justice courts must be specified in the writ; but within what period after the time specified in the writ, it was necessary for the defendant to hold his court, did not appear from the statute. It is evident, that there must have been some limit to his authority. But whether the suit became discontinued within one hour after the time specified in the writ, or not until after the lapse of a reasonable time, or not until after the expiration of the day in which the court was appointed to be holden, depended entirely on the laws of that state, and the construction given to their statute. The unwritten law of that state might clearly be proved by parol testimony. The construction given to the statute relating to justice suits, might be as much a part of the unwritten laws, as any part of the common law ; and consequently, capable of the same kind of proof. And it made no difference whether the construction arose from immemorial usage and practice, or in consequence of the de-

cisions of their highest judicial tribunals. In either case, if the construction had become a part of the laws of that state, it was capable of proof before our courts. The supreme court of the *United States* say, the rule which has uniformly been observed, by that court, in construing statutes, is, to adopt the construction made by the courts of the country by whose legislature the statute was enacted. *Cathcart* & al. v. *Robinson*, 5 *Pet.* 280. The deposition of the witness, who was a counsellor at law, and had, for many years, exercised the duties of the office of a justice of the peace in that state, was properly admitted. It was legitimate evidence for the jury to consider, in determining what were the laws of that state.

The testimony of *Cady* was properly admitted. He was permitted, by the court, to state, that when the plaintiff and *William Smith* called upon him, he had in his hands a certain note payable to the plaintiff, without the production of that note, or any evidence of its loss. Had the contents of the note been in controversy between the parties, it is very clear, that the witness could not have testified what the contents were, unless the non-production of the note had been accounted for. The question, however, was not respecting the contents, but the existence and possession of the note by the witness, at the time when he was called upon. Had the note been produced, it would not have proved these facts. They might as well be proved without, as with, the production of the note.

The court instructed the jury, that if the defendant, when he issued the writ and rendered judgment, was the owner of the note on which the suit was brought; and knowing himself to be such owner, instituted the suit and rendered the judgment, for the purpose of collecting his own debt, he was liable in this action, for having caused the plaintiff to be arrested and committed to gaol. The law thus laid down by the court, is founded upon the clearest principles of the common law and of natural justice. It would be a reproach to the law to allow a man to be a judge in his own case. It is said to be "one of the great ends of the institution of civil society to prevent men from being judges in cases wherein they are concerned, and to remit the decision of adverse interests to those who can have no interest whatever in the determination of any such cases." *The Two Friends*, 1 *Rob. Adm. Rep.* 237. (*Am.* ed.) *Mayor of Hereford's* case, 1 *Salk.* 396.

*Windham,*
July, 1837.

Dyer
*v.*
Smith.

The court further instructed the jury, that if the defendant rendered judgment in the suit after the expiration of the time, when, by the laws of the state of *Rhode-Island,* he was authorized to render such judgment, and without giving the present plaintiff any notice of the time of rendering it, he was liable for the arrest and commitment of the plaintiff. After the suit had become discontinued, by the omission of the defendant to attend to it, within the time allowed him by law, his power over the suit was at an end ; and any proceedings by him afterwards were *coram non judice.* He stood in the same situation as regards the plaintiff, as if no such suit had ever been commenced. It is indispensably necessary for the right administration of justice, that the law should be so. A man, when he is sued to answer before a justice, ought to know at what time he must attend, and how long he must remain, in order to discharge the duty imposed upon him by law ; and having discharged that duty and no justice having been found, he ought to be discharged from the suit. To suffer a justice to render judgment against him, at any time afterwards, at his pleasure, would open a door to a most mischievous abuse of judicial power.

We are, therefore, of opinion, that the decision of the judge in the court below upon all the questions presented by the motion, was right ; and that no new trial ought to be granted.

In this opinion the other Judges concurred.

New trial not to be granted.