THE STATE OF KANSAS, *on the relation of S. B. Bradford, Attorney General,* v. H. C. CROSS.

1. STATUTE —*Valid Section.* Section 4, ch. 179, Laws of 1887, is a constitutional and legal enactment, and therefore not in conflict with ?16, art. 2, of the constitution of the state.

2. CONTRACT, *Obtained by Bribery — Cancellation — Money Paid — No Return.* Where a person obtains, by bribery of those having control over such contracts, a contract for the purchase of lands of the State

Normal School, the contract is a fraud upon the state, against public policy, and therefore void. The courts must leave the briber where he stands, and deny him any benefit from the contract; and the state, in a proper action therefor, may obtain a cancellation of the contract obtained by bribery, without returning or offering to return the money paid by the briber upon the contract.

### Error from Lyon District Court.

ACTION by *The State* against *H. C. Cross,* to cancel a certain contract for the sale of 7,520 acres of State Normal School lands, at $3.50 per acre. *The State* demurred to the second count of defendant's answer. This demurrer was overruled at the April Term, 1886. The plaintiff brings the case here. The material facts appear in the opinion.

*S. B. Bradford,* attorney general, for The State; *Edwin A. Austin,* of counsel.

*Scott & Frith,* and *C. N. Sterry,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by the state of Kansas, upon the relation of the attorney general, against H. C. Cross, on October 24, 1885, to cancel a certain contract for the sale of seven thousand five hundred and twenty acres of State Normal School lands, at three dollars and fifty cents per acre. The contract was executed July 19, 1884, between H. C. Cross and Van R. Holmes, the authorized agent for the sale of the lands. The written contract provided that it should not be in force or take effect until indorsed with the approval of the secretary of the board of regents of the State Normal School, duly authenticated with its seal. Upon the date of the contract, the same was approved and signed by H. D. Dickson, secretary of the board of regents, with the seal of the board thereto attached. The sum of two thousand six hundred and thirty-two dollars was paid by Cross; and the balance of the money, twenty-three thousand six hundred and eighty-eight dollars, with interest, was to be paid in installments. The state alleged that the land was sold without any

authority of law; and further alleged that the land at the time of the sale was worth five dollars per acre, and that it could have been easily sold for that amount at that time; that the contract was induced by fraud and bribery upon the part of H. C. Cross.

Cross filed his answer, which contained a general denial; and alleged as a second count or defense, that "on July 19, 1884, in good faith and with the sanction and approval of the board of regents and the land committee thereof, he purchased the lands described in the petition, at the price fixed by the committee, to wit, three dollars and fifty cents per acre; and that thereupon Van R. Holmes, as agent to sell the lands, executed and delivered to him a written contract, duly signed by him and indorsed with the approval of the secretary of the board of regents, with the seal of the board thereto;" that he paid one-tenth of the purchase-money in cash, and agreed to pay the balance at his option, with interest at seven per cent. per annum, payable semi-annually; that the amount of the purchase-price paid in cash at the date of the contract, less commissions of the agent, was returned by the agent to the treasury of the state and the report of the sale and execution of the contract transmitted to the state auditor, and a copy of the same also delivered to the board of regents; that on January 1, 1885, in accordance with his contract, he paid into the treasury of the state interest amounting to seven hundred and forty-one dollars and fifty-eight cents; that on July 1, 1885, he paid into the treasury of the state the further sum of eight hundred and twenty-nine dollars and eight cents, as interest on the contract; that the board of regents, with full knowledge of all the facts and circumstances connected with and surrounding the purchase of the land and the execution and delivery of the contract, and the payment of the several sums of money into the state treasury, ratified and confirmed the purchase and sale, and also the contract. Cross also alleged that the state of Kansas had not returned or repaid, or offered to return or repay, the several sums of money paid by

him upon his purchase and contract, or any part or portion thereof.

The state demurred to the second count or defense of the answer, upon the ground that it did not state facts sufficient to constitute any defense whatever; the demurrer was overruled. The state excepted, and brings the case here.

The first claim made by the state is that the purchase and contract of July 19, 1884, are wholly void, because the sale of the lands at three dollars and fifty cents per acre is in contravention to chapter 189, Laws of 1872, which gave the board of directors of the State Normal School authority to sell the lands of the Normal School at a price not less than five dollars per acre. In 1877 an act was passed by the legislature to reorganize the State Normal School, and to provide for the sale of its land. (Laws of 1877, ch. 179.) Among other things it was provided therein that the Normal School should be governed by a board of regents, consisting of six persons. The fourth section of that act reads as follows:

"It shall be the duty of the board of regents to sell, or cause to be sold, under the provisions of chapter one hundred and eighty-nine of the Session Laws of eighteen hundred and seventy-two, the lands belonging to said institution, at not less than three dollars per acre; and no appropriation shall be made for this school in the future."

It is claimed upon the part of the state that this section is void, and in conflict with § 16, art. 2 of the constitution. We do not think the act contains more than one subject. At least, the objects of the act have relation and connections with each other; and therefore we think they are capable of being united in the same act. (*Comm'rs of Cherokee Co. v. The State*, 36 Kas. 337.)

1. Statute—valid section.

The principal contention however is, that said § 4 is amendatory of chapter 189, Laws of 1872, and thereby violates the provisions of § 16, art. 2 of the constitution, which ordains that "No law shall be revived or amended unless the new act contains the entire act revived, or the section or sections amended; and the section or sections so amended shall be repealed."

Several authorities are referred to from Nebraska and other states, fully supporting this claim. On account, however, of the prior decisions of this court, we are unable to follow the authorities cited. At a very early day in the juridical history of the state, in *Beach v. Leahy*, 11 Kas. 23, it was held that a special law, which was in conflict with a general law, was not therefore necessarily void. Subsequently this court, in *Comm'rs of Norton Co. v. Shoemaker*, 27 Kas. 77, following *Beach v. Leahy*, said that §16 of art. 2 was not intended to abolish the doctrine of repeals by implication. (See also *Harvey v. Comm'rs of Rush Co.*, 32 Kas. 159.)

Said §4 provides that lands belonging to the Normal School shall not be sold for less than three dollars an acre; and while it permits the board of regents to sell the land at this price, under the provisions of chapter 189, it may be treated and regarded as a separate or complete act. Statutes which amend as by implication are not within the provisions of the section referred to. (Cooley's Const. Lim., 1st ed., 152.)

Again:

"The mischief designed to be remedied by the constitutional provision cited was the enactment of amendatory statutes in terms so blind that the legislators themselves were sometimes deceived in regard to their effect; and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws." (*The People v. Mahaney*, 13 Mich. 496.)

Said §4 clearly expresses its purpose, and it cannot be said to have been enacted blindly, nor so inserted in the statute as to deceive the legislators, or the public.

Further, chapter 179, Laws of 1877, has stood upon the statute book over ten years unchallenged. Under its terms the State Normal School has been reorganized, large amounts of school lands have been sold, and contracts executed. Under these circumstances a very strong case indeed should be presented, to authorize this court to strike down the act, or to hold void contracts executed in good faith, within the exact terms of its provisions. Therefore if Cross in good faith

purchased the lands from the agent of the board of regents, duly authorized, in strict conformity with the statutes and regulations of the board, paid part of the purchase-money in cash, received his contract, and has since continued to pay as therein required, the contract cannot be canceled or set aside.

The further question is presented, if it be true as alleged in the petition that the contract was procured and obtained by bribery, whether the consideration need to be returned, or tendered by the state, before the contract can be annulled. On the part of the defendant, it is asserted that, even if the contract for the sale of the lands in controversy was obtained by bribery of those having control over the sale of the lands, a court of equity will not rescind the contract, unless the state, seeking relief, shall do equity by paying back what it received on the contract, or at least until it tenders payment before commencing suit.    A contract to induce public officers to act corruptly, or to bias them in discharge of their official duties, is against public policy; and such a contract is void.

"It would be going but half the distance required for public security if the courts would but simply deny the aid of their machinery to the corrupt participants.    A contract obtained by bribery of those having control over such contracts is obtained by fraud upon the principal; and it behooves the courts to leave the briber where he stands, and deny him any benefit from the contract.    It is immaterial how small or trifling the bribe was as compared with the amount involved in the contract.    Principle accommodates itself only to motives of parties, not to the sum gained by corrupt action." (Greenhood Pub. Pol. 308, 309.)

In *Lindsey v. City of Philadelphia*, 2 Phil. 212, Sharswood, J., said:

"It is important that corrupt contracts with public officers should be sternly repudiated by courts of justice, and that men should understand that in assenting to an allowance to such an officer of part of what they may have a claim for on the public treasury, be that allowance small or great, they absolutely forfeit all their legal rights on the public."

We think, therefore, upon principle and authority, that if the contract of July 19, 1884, was induced and obtained by

bribery of the officials having control thereof, the courts must leave the briber where he stands, and deny him any benefit from his contract. Therefore, if the allegations of the petition be fully established and bribery proved as therein charged, the state will not be required to return or tender the money paid by Cross, in order to have the contract canceled and wiped out. A party ought not to be permitted to induce public officers to act corruptly, and then, when the corruption is uncovered, be allowed to retire from the transaction, with his money returned to him, as if he had acted honestly and in good faith. Such conduct, if tolerated, would sap the condition on which official honesty rests, and legalize temptations which would lead from duty many an official who without such inducements might perform his duty.

2. Contract, obtained by bribery — cancellation — money paid — no return.

The answer contained a general denial, which put in issue the allegations of fraud and bribery. The second defense alleged that Cross made the purchase in good faith and in accordance with the law. The answer therefore was sufficient, and the demurrer properly overruled.

The judgment of the district court will therefore be affirmed.

All the Justices concurring.