CASSIUS C. BROWN *vs.* WILLIAM A. CARROLL *et als.*

A writ issued from a justice court was made returnable February 9, "at ten of the clock in the forenoon."

*Held,* that the writ could be duly entered in court from 10 A. M. to 11 A. M., but could not be entered after 11 A. M., so as to give the court jurisdiction over the defendant, unless by the defendant's voluntary appearance and waiver.

In a case before a justice court in which the writ was served by attachment of personalty, and was returned to court too late to give the court jurisdiction, an order was made for the sale of the attached personalty, and it was accordingly sold at auction. The defendant then brought trespass for the asportation and conversion of the personalty against the plaintiff, the attorney, the trial justice, the officer, the keeper of the personalty, and the auctioneer. A nonsuit was allowed as to the last.

*Held,* that the action would lie against the plaintiff, the attorney, and the trial justice.

When the justice court case was brought, in 1886, justice courts were inferior tribunals.

*Held,* further, that the action would not lie against the officer. The processes were correct on their face and protected him. He was not bound to judge of them by facts within his knowledge which might invalidate them.

*Held,* further, that the action would not lie against the keeper. When he was appointed nothing had occurred to invalidate the attachment, and he merely kept the goods till the sale.

The personalty was mortgaged when attached. Evidence was adduced that the mortgagee had foreclosed and loaned the personalty to the mortgagor, who was the defendant in the justice court case and the plaintiff in trespass.

*Held,* that the measure of damages was the full value of the personalty.

DEFENDANTS' petition for a new trial.

*August* 17, 1889. DURFEE, C. J. This is an action of trespass brought in the Court of Common Pleas against the defendants for taking, carrying away, and converting to their own use certain goods and chattels belonging to the plaintiff, specified in the declaration. The defendants plead severally, first, the general issue, and, second, specially in justification as to a part of said goods and chattels, that they were attached February 1, A. D. 1886, on an original writ in an action begun in the justice court of the town of Scituate, January 28, A. D. 1886, by Henry W. Olney, one of the defendants, against the plaintiff, and were sold by the officer making the attachment, to wit, William A. Carroll, another of the defendants, March 11, A. D. 1886, in pursuance of an order to sell them made by said court under Pub. Stat. R. I. cap. 208, §§ 2, 3.[1] The plaintiff joined issue on the first plea, and to the

---

[1] As follows :

"SECT. 2. Whenever any officer shall attach on an original writ any live

second plea replied, *first*, that the writ was not seasonably returned and entered in said court, by reason whereof he argues that the action was not pending therein when said order was made, and consequently that said order was void ; and, *second*, that no notice was given to him of the application for said order.

The action was brought against said Olney and Carroll, and also against Franklin P. Owen, attorney at law, who acted for said Olney in said action and in procuring said order ; against Ira Case, trial justice, who held said justice court ; Wallace E. Harris, who acted as keeper of the goods attached until they were sold ; and William A. Phillips, who was employed to act as auctioneer in selling them. In the court below, after the testimony for the plaintiff was in, a nonsuit was granted in favor of Phillips, and refused as to the other defendants. The defendants then submitted their testimony. The jury returned a verdict against them. They petition for a new trial on the ground that the verdict is against the evidence and the weight thereof, and for alleged erroneous rulings and instructions made and given by the court.

The leading question is that of jurisdiction. The justice court writ was returnable February 9, A. D. 1886, " at ten of the clock in the forenoon." It was returned by the officer who served it to Mr. Owen, attorney for Olney, in Providence, and by him was sent by mail, with the entry fee, to the court in Scituate. According to the plaintiff's testimony, it did not reach the court until after 11 o'clock, A. M., of the return day, probably not until after

---

animals, or any goods or chattels which are liable to perish or waste, or to be greatly reduced in value by keeping, or which cannot be kept without great and disproportionate expense, the court in which the same shall be pending, in term time, or any justice thereof in vacation, or the trial justice of any justice court in which such writ shall be pending, may, on the written application of any person interested in such property, cause the defendant and the attaching creditor, their attorneys or agents, to be notified to appear at a time and place appointed for that purpose, to show cause why the same should not be sold.

" SECT. 3. If, after reasonable notice, no person appear, or no sufficient cause to the contrary be shown, the court or justice may direct the officer to sell the same, in the manner prescribed by law for selling goods and chattels on execution ; and such officer shall hold the proceeds of such sales, after deducting therefrom the necessary charges thereof, as security to satisfy such judgment as the attaching creditor may recover, in the same manner as if he held the property itself."

noon, possibly not until the next morning. The testimony adduced by the defendants tends to show that the writ arrived on the return day, perhaps soon after 11 o'clock, A. M., but we do not think it shows a return before that time. The writ was indorsed, "Entry fee paid Feb. 9, 1886, continued to Feb. 16, 1886 ; continued to Feb. 23 with order of notice on deft." Accordingly Brown was notified that the writ "was duly entered on the 9th day of February, A. D. 1886, after the regular hour, and was continued to this day, February 16, A. D. 1886, at 10 o'clock, A. M., and this day was further continued to February 23, A. D. 1886, at 10 o'clock, A. M., at which time said case will be in order for trial." The notice was signed, "Ira Case, Trial Justice." The plaintiff Brown was at the court room on the 9th, but left before the writ arrived, although, according to his testimony, he remained until 12.20 P. M. The writ was received and continued by a justice of the peace, under Pub. Stat. R. I. cap. 196, § 13.[1] The plaintiff Brown appeared on the 16th, and presented to the trial justice, then present, a paper, prepared by his counsel, protesting against any assumption of jurisdiction over the case by said trial justice. There is no evidence that after the 9th the plaintiff ever consented to go on with the case.

The court below ruled that the writ, being returnable at ten o'clock, could be returned and entered at any time before eleven on the return day, but not afterwards. Owen, the attorney for Olney, testified that he had a conversation with the attorney for Brown the day before the return day, in which he, Owen, said to him that he could not enter the writ so as to be sure to be in time unless he went out to the court, the roads being in such bad condition that it was not safe to trust to the mail, and that the attorney for Brown replied, "That will be all right; the case can be continued, if I don't decide to submit and appeal." Brown's attorney denies having had the conversation. The court below ruled that the entry of the writ after eleven o'clock, with the consent of

---

[1] As follows :

"SECT. 13. In case of the absence or inability of the trial justice of any justice court having no clerk, or of both justice and clerk, any justice of the peace residing within the jurisdictional limits of such court may adjourn the same, and continue all business pending before it."

Brown's attorney previously given, would not give the justice court jurisdiction. The defendants offered testimony to show that it was the custom for the justice court in Providence to allow writs to be entered after the hour and continued, and for the court, after notice to the defendant, to treat the case as duly entered. The court below ruled that such a custom, even if it were notorious, would not avail to give jurisdiction. These rulings were excepted to. Were they correct?

We think they were. The cases of *Blanchard* v. *Walker*, 4 Cush. 455, and *Dyer* v. *Smith*, 12 Conn. 384, are cited in support of them. In the first of these cases it appeared by the record that the writ was returnable July 28, 1847, at 4 P. M. ; that the justice did not appear until 5.30 P. M., at which time he entered the action and proceeded to trial against the defendant's objection. On appeal the Supreme Judicial Court decided that the proper time for the entry was within the hour named in the writ, and, if the entry is not so made, the defendant may refuse to appear, or may appear merely to move a dismissal of the action. The second case was trespass for false imprisonment. Smith was a Rhode Island justice of the peace, who entered judgment by default, on a writ returnable before him, and thereupon issued execution and caused the defendant to the writ to be committed to jail. It appeared in evidence that the writ was returnable at 1 P. M.; that the defendant to the writ duly attended and waited more than an hour; that Smith, the justice, was absent and did not return until evening, when he entered judgment in the absence of Dyer, the defendant to the writ, and without notice to him. Dyer contended that the judgment was void for want of jurisdiction, and, the question being as to the law of another state, introduced the deposition of Thomas F. Carpenter, an eminent Rhode Island lawyer, who deposed that, "so far as his knowledge extended, the practice had been invariable, unless varied by the agreement of all the parties interested, to allow one hour from the hour appointed in the writ for the justice and the parties to appear. If during that hour the justices did not appear, the whole proceedings were considered to be ended, and the plaintiff was obliged to begin *de novo*." Accordingly the jury found the defendant guilty, and their verdict was sustained. Says the court: "A man, when he is sued to answer before a justice, ought

to know at what time he must attend, and how long he must remain, in order to discharge the duty imposed upon him by law; and having discharged that duty, and no justice having been found, he ought to be discharged from the suit."

Both of these cases rest on the view that the return hour named in the writ lasts until the next following hour begins, and no longer. In that view it is ten o'clock until it is eleven. It seems to us that such a construction is not unreasonable and was rightly sustained. But, on the other hand, it seems to us that it would be inadmissible to say that it is still the hour of ten after the hour of eleven has begun, and therefore that the court below rightly held that it was too late after eleven to return and enter a writ which was returnable at ten. We think the court below was also right in refusing to allow any effect to the alleged agreement to waive the time. The agreement, if there was any, preceded the return day; it was oral, and disputed; it could not be made a part of the record. And we also think that the offer of testimony to prove the alleged usage was rightly ruled out, for if the jurisdiction had lapsed, because the writ was not seasonably returned and entered, how could the court, without jurisdiction over the case, have jurisdiction to issue a notice which would bind the defendant unless he chose to accept it as binding? We say " unless he chose to accept it as binding," since we do not mean to deny that a defendant can, if he chooses, revive the jurisdiction, after it has so lapsed, by appearing and going on with the case, or otherwise submitting to the writ without objection, inasmuch as what is lacking is jurisdiction of his person, and that he can confer by consent. In the case at bar there was no consent, but on the contrary a protest against the assumption of jurisdiction.

The defendants contend that, conceding the defect, their defence is good nevertheless, because the order of sale is voidable only, not void, and cannot be collaterally impeached, the proper remedy being by appeal or other direct proceeding. There are cases that support this contention, but, as respects inferior courts, only when the record shows jurisdiction and does not show the defect, the ground of decision being that the record imports absolute verity. Other cases hold that the record is only *primâ facie* proof of jurisdiction and may be collaterally contradicted. See Freeman on

Judgments, § 517. In the case at bar the record shows the defect. It does not allege that the writ was entered at ten o'clock, and it does allege that the case was continued from February 16th to February 23d, " with order of notice on the defendant," and the notice, issued that day under the hand of the trial justice, expressly states that the writ was entered " after the regular hour," and the record of the judgment shows that said defendant was notified. We think, therefore, that in the case at bar the question of jurisdiction is open to inquiry even collaterally, and that, it appearing that the order of sale was made after the jurisdiction had lapsed, the order is void and affords no defence. Whether the question would have been concluded if the record had been different, we need not determine.

Was the plaintiff entitled to a verdict against all the defendants who were found guilty ? It seems to us that the verdict against William E. Harris, who acted as keeper, is erroneous, for when he was appointed nothing had occurred to invalidate the attachment, and he simply retained the property until the sale.

Is the verdict against Ira Case, the trial justice, good ? We think so. It is only judges of superior courts who are protected from private suits for their acts, when they act without jurisdiction, the judges of inferior courts being liable, at least when their proceedings are such that they can be collaterally impeached. Cooley on Torts, *419 ; *Crepps* v. *Durden et als.* Cowp. 640 ; 2 Smith Lead. Cas. 9th Amer. ed. 978, and notes, 1023–1041. We do not think the justice courts, as they existed A. D. 1886, were superior courts. They were the lowest judicial tribunals in the State. Their jurisdiction was limited in civil matters to cases in which the debt or damages demanded did not exceed one hundred dollars, and in criminal cases their general jurisdiction to pass sentence extended only to offences punishable by fine not exceeding twenty dollars, or by imprisonment not exceeding three months, and both their judgments and sentences were subject to appeal. Territorially, also, their jurisdiction was very restricted. And see *Piper* v. *Pearson*, 2 Gray, 120 ; *Spencer* v. *Perry*, 17 Me. 413 ; *Percival* v. *Jones*, 2 Johns. Cas. 49.

The question is likewise raised in regard to Olney, the plaintiff in the justice suit, and Owen, his attorney. In Cooley on Torts,

*468, the law is thus stated : " The party is liable where he participates in the unlawful action of either the magistrate or the ministerial officer. He is in general responsible for setting the court or magistrate in motion in a case where they have no authority to act ; and perhaps to this rule there is no exception but this, that, if the jurisdiction depends upon the facts, and these are presented to a court having general jurisdiction of that class of cases, and the court decides that it has authority to act and proceeds to do so, this decision protects, not the officer merely, but the party also." So, also, on page *131 : " If an attorney sues out an illegal writ, the party for whom he acts is so far identified with him in the proceedings that he is responsible for what is done under it." In *Revill* v. *Pettit*, 3 Metcalfe, Ky. 314, it was held that an attorney who procures or advises a judicial officer to act without jurisdiction is liable. See, also, 1 Smith Lead. Cas. 9th Amer. ed. 1043, 1044. We think it is clear, according to the rules so laid down, that Olney and Owen are both liable ; for the testimony is undisputed that Owen advised and procured the trial justice to assume jurisdiction of the writ on the 16th of February, and also procured the order afterwards under which the goods attached were sold, and that Olney was the purchaser of the goods. Cooley on Torts, *470.

The question next arises as to Carroll, the officer. We do not think that Carroll can be held to answer for making the attachment or holding the goods under it, the writ when he made the attachment being legal. The question relates to his selling under the order of sale, and is, whether he is protected by the order, which was regular on its face. The officer is bound to execute writs according to the exigency thereof, and the writ, if regular on its face, is ordinarily a sufficient justification. Murfree on Sheriffs, § 929 ; Freeman on Executions, §§ 100, 101. An officer, however, may know that a writ which is regular on its face is invalid, or may be cognizant of some fact by reason of which it is invalid. The plaintiff contends that the order of sale here was invalid, because notice of the application for it was defectively served, and Carroll, who made the service, was, of course, cognizant of it. There is a conflict of decision on the question whether an officer having such knowledge is protected. See cases cited in

Freeman on Executions, 2d ed. § 102. Mr. Freeman thinks that an officer having the knowledge is not protected. The same question is considered by Judge Cooley in his work on Torts, and he comes to the conclusion that " the weight of authority and of reason is clearly in favor of the proposition, that the officer may safely obey all process fair on its face, and is not bound to judge of it by facts within his knowledge which may be supposed to invalidate it." Cooley on Torts, *465, *466. See, also, *Underwood* v. *Robinson*, 106 Mass. 296. We agree with Judge Cooley. It seems to us that it is matter of public policy that the officer should be protected if the process be fair on its face; for though he may know the invalidating fact, he may not know as law that it does invalidate, and he ought not to be put to the trouble of inquiry, since it is his duty to obey rather than question. Doubtless, in the case at bar, while Carroll knew the fact which is claimed to have invalidated the order of sale, it never occurred to him that it did invalidate it. It seems to us that as against him the verdict was erroneous.

We come now to the question of damages. It was in evidence that the goods attached were under mortgage, and the defendants asked the court, in view of the mortgage, to instruct the jury that the plaintiff could not recover the full value of the goods, but only to the extent of his actual loss as mortgagor; but the court refused, and did instruct them that the plaintiff was entitled to recover the full value, if entitled to recover at all. We think the instruction was correct. The rule in this respect is the same as in the case of a bailment, that is to say, that either the mortgagor in possession or the mortgagee may maintain the action, as either the bailor or bailee may in the case of a bailment, the privity between them being such that a judgment recovered by either is a bar to an action by the other for the same injury. Jones on Chattel Mortgages, § 447. There was some evidence that the mortgagee had taken possession, and that the mortgagor had borrowed the goods for a temporary purpose; but if this were so, the plaintiff, if entitled to recover, would be entitled to recover the full value, since in that case he would be a bailee. Story on Bailments, § 94; *Rindge* v. *Inhabitants of Coleraine*, 11 Gray, 157, 162; *Green* v. *Clarke*, 12 N. Y. 343, 353; *Smith* v. *James*, 7 Cow. 328; *Chesley* v. *St. Clair*, 1 N. H. 189.

Other grounds are assigned for a new trial, but we do not deem them sufficient.

Our conclusion is, that the judgment of the Court of Common Pleas must be set aside and a new trial granted, unless the plaintiff will thereupon discontinue as against Carroll and Harris, they to have judgment for costs, and take judgment under the verdict only against Olney, Owen, and Case.

*Marquis D. L. Mowry*, for plaintiff.

*Charles H. Page & Franklin P. Owen*, for defendants.