## JOHN F. LIMERICK & COMPANY v. HENRY MURLATT.

1. JUSTICE OF THE PEACE — *Agent* — *Misdemeanor.* At common law it is a misdemeanor for a justice of the peace to act as agent for one of the parties litigating before him.

2. ACTION *before Disqualified Justice* — *Dismissal.* A justice of the peace was given a large block of notes by a plaintiff under an agreement with him that actions were to be brought upon the notes before the justice, if they could not be collected by the justice without suit. The agreement further provided that if in the actions commenced before him upon the notes "the justice was able to make his costs out of the defendants, he was to do so, but if he could not make his costs out of the defendants, he was not to get his own costs." *Held,* That the agreement between the justice and the plaintiff made the justice an interested party in the result of the actions, and therefore disqualified him to act as a justice of the peace in the case. *Held further,* That a justice of the peace to whom an action upon one of the notes was transferred on change of venue from the justice originally issuing the summons, and also that the district court to which the plaintiff appealed, properly sustained motions to dismiss all prior proceedings, because the action was commenced before a justice who was interested in the case and therefore disqualified.

*Error from McPherson District Court.*

THE case is stated in the opinion. Judgment for costs against plaintiffs, *Limerick & Co.*, at the January term, 1888. They bring the case to this court.

*Frank G. White,* for plaintiffs in error.
*Simpson, Bowker & Travis,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The facts in this case are as follows: On May 22, 1883, Henry Murlatt executed his promissory note, payable on October 1, 1883, to the order of the Burlington Insurance Company, for $28.65. The note was subsequently assigned in writing to John F. Limerick & Co. On the 19th of August, 1887, the note being in the possession of C. M. Bruce, a justice of the peace of the city of McPherson, a summons was issued thereon by him and delivered to A. R. Brown, a constable, for service. The summons was served. At the commencement of the action a bond for costs was filed, and approved by the justice. On the 29th of August, 1887, at the time for the return of the summons, Murlatt filed an affidavit for a change of venue from C. M. Bruce, the justice of the peace, on account of prejudice. The application was granted, and the justice transmitted all of the papers to B. F. Short, another justice of the peace of the city of McPherson. On the 5th of September, 1887, the case came on to be heard, and Murlatt presented a motion to dismiss the case, upon the ground that C. M. Bruce, before whom the action was commenced, was at the time the agent of John F. Limerick & Co., for the collection of the note, and also for the reason that no valid bond for costs had ever been executed or filed — Limerick & Co. being non-residents. The motion to dismiss was sustained by the justice of the peace to whom the case had been transferred, and Limerick & Co. appealed to the district court. A motion was made to dismiss the case in the district court for the same reasons that

were presented to the justice of the peace. The district court sustained the motion and entered a dismissal, with costs against Limerick & Co. It appears from the record that C. M. Bruce, prior to the commencement of this action before him, was given a large block of notes by Limerick & Co., under an agreement that actions were to be brought thereon before him, if the notes could not be collected by the justice without suit. The note in dispute is one of the notes received by C. M. Bruce under this arrangement. It is also shown, we think, that the bond for costs was signed in blank by the parties whose names are attached thereto. The justice filled up the bond in the absence of the parties and the sureties, and then filed and approved the same.

We think, upon the facts disclosed by the record, that the judgment of the district court must be affirmed. A. R. Brown, the constable, testified among other things as follows:

"Q. Now, to refresh your memory, Mr. Brown, I ask you if this clause wasn't inserted in this contract, 'that Mr. Bruce should take these notes and sue upon them, and, in case he was able to make his costs out of the defendants, he was to do so, and if he couldn't make costs out of the defendants, he was not to get his own costs'? A. That was my understanding; I don't know whether it was in there.

"Q. How did you get that understanding? A. It was talked there.

"Q. I will ask you if you were a party yourself to that contract as constable? A. I was to a part of the contract; I was the party to serve the papers that were issued to me, and I was to serve them on the same terms that the justice of the peace was to issue them.

"Q. What were the terms you were to serve them on? A. I was to serve them on the terms, 'if we got the costs out of the defendants, I was to get my costs, and if I didn't, I wasn't.'"

C. M. Bruce denied that the agreement was as Brown stated. He however admitted that a written agreement was entered into between him and Limerick & Co., but said the paper was lost, and could not be produced.

The presumptions are all in favor of the rulings of the trial court, and where the testimony in a case is in any way conflicting, it must be construed, if possible, to sustain the court. We must, therefore, under the general findings of the trial court, accept the testimony of A. R. Brown as true.

Under the agreement entered into between C. M. Bruce, the justice of the peace, and Limerick & Co., Bruce was interested in the action commenced before him. If he could not recover his costs from Murlatt, the payee, he was not to receive any costs. This, of course, was an inducement for him to render judgment against Murlatt in order to obtain his costs, whether Murlatt was liable or not upon the note. In one sense, the agreement was in the nature of bribery. It was very much· as if Bruce was to receive money from Limerick & Co. if he would render judgment against Murlatt, the maker of the note.

"It occasionally happens that, while a court has jurisdiction over the subject-matter in controversy and the parties to the action, the judge of the court is disqualified from acting by reason of his having an interest in the suit, or his being related to some of the parties, or his being within some of the disqualifications recognized by the common or by the statute law. It is a maxim of every country that no man should be judge in his own case. The learned wisdom of enlightened nations, and the unlettered ideas of ruder societies, are in full accordance upon this point, and wherever tribunals of justice have existed, all men have agreed that a judge shall never have the power to decide where he is himself a party. In England it has always been held, that however comprehensive may be the terms by which jurisdiction is conferred upon a judge, the power to decide his own cause is always a tacit exception to the authority of his office." (Freeman on Judgments, § 144.)

In the case of *Hesketh v. Braddock*, 3 Burrows, 1847, a judgment of the portmote court of the city of Chester was reversed by the great sessions for the county of Chester, and the reversal affirmed by the court of king's bench, because the person who tried the cause, and the officer who returned them, were interested in the cause.

In *Dyer v. Smith*, 12 Conn. 384, it is said:

"The court instructed the jury that if the defendant, when he issued the writ and rendered judgment, was the owner of the note on which the suit was brought, and knowing himself to be such owner, instituted the suit and rendered the judgment, for the purpose of collecting his own debt, he was liable in this action, for having caused the plaintiff to be arrested and committed to jail. The law thus laid down by the court is founded upon the clearest principles of the common law and of natural justice. It would be a reproach to the law to allow a man to be a judge in his own case. It is said to be one of the great ends of the institution of civil society to prevent men from being judges in cases wherein they are concerned, and to remit the decision of adverse interests to those who can have no interest whatever in the determination of any such case." (*The Two Friends*, 1 Rob. Adm. Rep., Am. ed., 237; *Mayor of Hereford's Case*, 1 Salk. 396.)

At common law, it is a high misdemeanor for a justice of the peace to act as agent for one of the parties litigating before him. (*Boyer v. Potts*, 14 Serg. & R. 157.) So, where a justice of the peace who was surveyor of the highways, joined in making an order at the sessions in a matter which concerned his office, and his name was put in the caption, the order was for this reason quashed. (*Foxham Tithing in Wilts*, 2 Salk. 607.)

It is said in *Boyer v. Potts*, supra:

"Justices of the peace no doubt frequently act as agents for those who employ them, but they ought to know that they do so at the peril of being convicted of a highly aggravated misdemeanor, which is indictable at the common law. Ignorance cannot palliate a crime of this sort; for the turpitude of acting both as a judge and party in the same cause, cannot but be obvious to the dullest comprehension."

1. Justice of the peace—agent —misdemeanor.

It is the right of every citizen of the state to have a fair and impartial trial. This right applies to civil as well as criminal causes, and not only to judges of courts of record, but also to justices of the peace, and all other persons authorized to decide between parties in respect to their legal rights. In

this case, C. M. Bruce not only issued the summons in a case in which he was interested, but he also filed and approved a bond for costs.

Therefore, in a case in which he was interested, he passed upon the form of the bond and the sufficiency of the sureties thereto. As Bruce was interested, and as he was not and could not be impartial, he was disqualified to act in the case. The appearance of Murlatt to take a change of venue, on account of prejudice, did not waive the disqualification of C. M. Bruce, or confer upon him jurisdiction. As soon as the cause was in the possession of a justice competent to hear and dispose of motions, Murlatt filed a motion to dismiss. The motion was sustained, and in the district court a similar motion was sustained; therefore the case does not come here as if judgment had been rendered and then collaterally attacked. The motions to dismiss were in the nature of direct attacks upon the prior proceedings.

*2. Action before disqualified justice.*

Exceptions were taken to Bruce acting as a justice of the peace, as soon as Murlatt had the case before a justice who was disinterested. Murlatt consented to nothing which aided or helped Limerick & Co. Limerick & Co. are not innocent parties; they are wrong-doers. By their agreement with Bruce, the justice of the peace, they place before him a temptation — an inducement to render a judgment corruptly. Such an agreement between the parties was not only improper, but illegal. The conduct of Limerick & Co. deserves severe censure — not support or toleration. (*The State v. Gross*, 38 Kas. 696; *Sigourney v. Sibley*, 21 Pick. 101; *Hall v. Thayer*, 105 Mass. 219.)

The judgment of the district court will be affirmed.

All the Justices concurring.