State, *ex rel.* Egan, *v.* Wolever *et al.*

Judgment affirmed.

Filed Feb. 26, 1891.

## No. 14,818.

## STATE, EX REL. EGAN, v. WOLEVER ET AL.

JUDGE.—*Inferior Court.*—A judge or magistrate of a court of inferior jurisdiction, acting in a matter which is within his jurisdiction, is entitled to the same immunity accorded to a judge of a court of general jurisdiction.

SAME.—In such a case, a judge or a magistrate of a court of limited jurisdiction is acting within his jurisdiction if the court, over which he presides, has jurisdiction of the subject-matter, and he has acquired jurisdiction of the persons of the parties litigant.

SAME.—A court of limited jurisdiction has jurisdiction of the subject-matter in a given case if it has jurisdiction of the class of cases to which the particular case belongs.

SAME.—A magistrate or a judge of any court, whether of general or of limited jurisdiction, only exceeds his jurisdiction so as to incur civil liability where he acts wholly without jurisdiction, and where the authority which he assumes to exercise is a usurped authority.

SAME.—Where a court of limited jurisdiction has jurisdiction in a given cause of both subject-matter and of the parties, an application for a change of venue, properly made and erroneously refused, will not render the judge or magistrate liable for thereafter assuming to retain jurisdiction and dispose of the case.

SAME.—Deciding a motion for a change of venue is a judicial act, and the immunity accorded for such decision extends to the consequences legitimately flowing therefrom.

SAME.—*Mayor.*—*Change of Venue Denied.*—*Civil Liability.*—A mayor who maliciously, or corruptly, refuses to grant a change of venue, upon proper application made, in a case pending before him, is not liable, civilly, to the person applying for it, although such person be fined and imprisoned as a result of the trial. *Dietrichs* v. *Schaw*, 43 Ind. 175; *Barkeloo* v. *Randall*, 4 Blackf. 476; *Krutz* v. *Howard*, 70 Ind. 174, doubted.

From the Tippecanoe Circuit Court.

*R. C. Pollard* and *C. R. Pollard*, for appellant.

*L. D. Boyd* and *R. P. Davidson*, for appellees.

McBRIDE.—This was a suit by appellant for false imprisonment against Andrew W. Wolever, as mayor of the city of Delphi, and Allen M. Eldridge and Henry H. Montman, sureties on his official bond.

Appellant was brought before the **mayor for trial**, charged

with unlawfully selling intoxicating liquors to a minor. He was prosecuted by the name of James Aikens, and on being arraigned entered a plea of not guilty.

He then asked for a change of venue from the court. This was not granted him, and the court proceeded to hear and determine the case. He was adjudged guilty, and fined $20 and costs. In default of payment he was committed to jail, where he remained one day, and then, to secure his re-lease, paid the fine and costs, amounting to $30.80.

Appellant bases his right to recover on the failure of the court to grant him a change of venue, and on the circumstances connected therewith. The complaint was in four paragraphs, and the court below sustained a separate demurrer to each paragraph upon the ground that it did not state facts sufficient to constitute a cause of action. An exception to this ruling, properly saved, presents the only questions in the record.

Omitting prefatory and technical averments, the facts constituting the alleged false imprisonment are stated in the first paragraph of the complaint as follows:

"That on the 19th day of December, 1887, the relator, Mike Egan, was brought before said defendant, Andrew W. Wolever, upon a warrant issued by him, as such mayor, against the relator by the name of 'James Aikens,' upon the charge of unlawfully selling liquor to a minor, and was compelled and required to plead to said charge. Whereupon he pleaded not guilty, and knowing that the issue thus made could not be fairly tried before the defendant, Andrew W. Wolever, because of the bias and prejudice of the said Wolever against every one who is charged with unlawfully selling intoxicating liquors, and knowing that the defendant, Wolever, entertained malice towards all who are engaged in the lawful business of selling intoxicating liquors, and being unwilling to subject himself to the peril of an unjust, unfair and prejudiced trial of the charge against him, before the

trial of said cause began, he made and subscribed an affidavit in the words and figures following:

"'STATE OF INDIANA, CARROLL COUNTY.

"'STATE OF INDIANA }
     *vs.*      } *Affidavit for Change of Venue.*
  MIKE EGAN. }

"'The defendant, Mike Egan, being first duly sworn, says that he can not have a fair and impartial trial in said cause before the mayor, Andrew Wolever, on the account of his prejudice against said defendant and his defence to said action.                          MIKE EGAN.'

"And having made and subscribed said affidavit, he requested the defendant, Andrew W. Wolever, said mayor, to swear him to said affidavit, to permit him to file the same, and thereupon to grant him a change of venue; but said defendant, Wolever, acting as such mayor, refused to swear him to said affidavit, refused to file the same and refused to grant him a change of venue, and proceeded to try and convict relator of the offence with which he was charged, and to inflict punishment upon him therefor. That in so acting the defendant, Wolever, acted unlawfully, maliciously and corruptly, well knowing his duty to swear the relator to said affidavit, and that the same, when sworn to, was sufficient to compel a change of venue, well knowing the relator's right to apply for a change of venue; that this relator is the very person who was brought before the defendant, Wolever, by virtue of said warrant, the only person who pleaded to the charge embraced in said warrant, and the affidavit upon which it issued, and was known to the defendant, Wolever, to be such person."

The second paragraph, in addition, charges that the appellee having in said cause found appellant guilty as charged, adjudged, as his punishment, that "he make his fine to the State of Indiana in the sum of twenty dollars, and that he be imprisoned in the jail of Carroll county for ———— days,

and that he pay the costs of the prosecution, and stand committed until said fine and costs are paid or replevied."

Said paragraph then proceeds as follows: " And adjudged no other punishment or penalty whatever; and because the relator was unable to pay said fine and costs the defendant, Wolever, still acting as such mayor, issued his *mittimus* to the jailer of Carroll county, Indiana, in which said defendant, Wolever, falsely, maliciously, knowingly and corruptly, recited and declared that in default of payment of such judgment, or costs, the defendant was further adjudged and required to pay the same by manual labor, under the control of the street commissioner, in streets, or other public works of the city of Delphi, at a rate of ———— cents per day, and commanding said jailer to receive the relator into his custody, and to obey the judgment so recited in reference to the relator.   That in obedience to the command of said writ the jailer of Carroll county, Indiana, did take the relator into his custody, and imprisoned him in the common jail of Carroll county, Indiana, where the relator was imprisoned and detained for the period of one day, greatly to relator's damage," etc.

The third paragraph contains the additional allegations that, after the mayor had refused to swear appellant to the affidavit for a change of venue, and while " said cause was yet pending, before the trial thereof was begun, and before judgment or finding therein had been made or pronounced, the relator procured the services of a notary public of Carroll county, Indiana, and then and there, in the presence and hearing of the defendant, Andrew W. Wolever, was by said notary public, sworn to the truth of the matters set forth in said affidavit, and said notary public then and there, in the presence and view of the defendant, Andrew Wolever, attached to said affidavit his notarial seal," etc., and alleged that appellant then renewed his motion for a change of venue, tendering said affidavit in support of the motion, but that the

mayor refused to receive or examine it, or to grant the change.

The fourth paragraph contains no material averment in addition to such as are contained in one or more of the other paragraphs.

The powers and duties of mayors of incorporated cities are defined by section 3062, R. S. 1881. Among other powers conferred upon him he is given, within the limits of the city, the jurisdiction and powers of a justice of the peace in all matters, civil and criminal, arising under the laws of this State. In crimes and misdemeanors his jurisdiction is co-extensive with the county in which such city is situated, and his jurisdiction is enlarged over that of a justice of the peace, so that he may adjudge imprisonment as a part of his sentence, not exceeding thirty days in the city or county prison.

The jurisdiction of justices of the peace in criminal cases is defined by section 1637, R. S. 1881. They are given concurrent jurisdiction with the circuit and criminal courts to try and determine all cases of misdemeanors punishable by fine only, and may assess fines to the amount of twenty-five dollars.

Selling or giving intoxicating liquor to a minor is made a misdemeanor by section 2094, R. S. 1881, and is punishable by fine only.

Appellant was arrested on a warrant issued by the mayor upon a charge of selling intoxicating liquor to a minor. The prosecution against him was, therefore, one of which as mayor he had jurisdiction. Appellant being brought into court and arraigned entered a plea of not guilty. The court then had jurisdiction both of the subject-matter and of the person of appellant. Indeed, up to this point the jurisdiction of the mayor is not questioned. The question is, how far, if at all, are the mayor and his sureties liable by reason of what transpired thereafter?

The position of appellant, as we understand it, is that he was entitled to the change of venue for which he asked, that

when the application for the change was made its effect was to oust the jurisdiction of the mayor, and that all his subsequent acts were *coram non judice* and void.

There is nothing novel in the principle here involved, as questions concerning the liability of judicial officers, for their acts as such, have engaged the attention of the courts from an early day. The only difficulty is in the application of that principle to the facts in any given case. As pertinent to the question we quote the language of FOLGER, J., in the case of *Lange* v. *Benedict*, 73 N. Y. 12 (18 Albany Law Journal, p. 11): " There are not many topics in the law which have received more discussion and consideration than that of the liability of a person holding a judicial, or *quasi* judicial, office, to an action at law, for an act done by him while, at the same time, exercising his office. The principles which should govern such action are, therefore, well settled. The difficulty in satisfactorily disposing of a particular case is, not in finding the rule of law upon which it is to be decided, but in determining on which side of that rule the facts of the case do lie. The general rule, which applies to all such cases, and which is to be observed in this, has been in olden times stated thus :  ' Such as are by law made judges of another, shall not be criminally accused, or made liable to an action for what they do as judges ; '  to which the Year Books (43 Edw. III. 9 ; 9 Edw. IV. 3) are cited in *Floyd* v. *Baker* (12 Coke, 26). The converse statement of it is also ancient; where there is no jurisdiction at all there is no judge; the proceeding is as nothing. *Perkin* v *Proctor*, 2 Wilson, 382–4, citing the *Marshalsea Case* (10 Coke, 65–76), which says : ' Where he has no jurisdiction, *non est judex.*'  It has been stated thus, also :  ' No action will lie against a judge acting in a judicial capacity, for any errors which he may commit, in a matter within his jurisdiction.'  *Gwynne* v. *Pool*, Lutw. 290. It has been, in modern. days, carried somewhat further, in the terms of the statement :  Judges of superior or general jurisdiction are not liable to civil actions

for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously and corruptly. *Bradley* v. *Fisher*, 13 Wall. 351."

The case of *Yates* v. *Lansing*, 5 Johns. 282, is to the same effect. KENT, Ch. J., in announcing the opinion of the court, citing and discussing many cases, says : " These cases, and many more opinions of the like effect, which could be gleaned from the Year Books, conclusively show that judges of all courts of record, from the highest to the lowest, and even jurors, who are judges of fact, were always exempted from prosecution, by action or indictment, for what they did in their judicial character."

The principle has also been recognized and applied in this State.

In the case of *Kress* v. *State, ex rel.*, 65 Ind. 106, it is said that a judicial officer, acting in the exercise of judicial functions, is not to be held liable to a party injured, however erroneous, false or fraudulent his judgment might be. See, also, *Elmore* v. *Overton*, 104 Ind. 548, where the court says : " It is well settled, and hence conceded, that a judicial officer is not civilly liable for an erroneous decision, however gross the error may have been, or however bad the motive was which inspired it. Such a liability would be inconsistent with the proper exercise of judicial functions." See, also, *Larr* v. *State, ex rel.*, 45 Ind. 364 ; *State, ex rel.*, v. *Jackson*, 68 Ind. 58 ; *Halloran* v. *McCullough*, 68 Ind. 179 ; *State* v. *Ross*, 4 Ind. 541.

A very interesting and instructive discussion of the immunity of judicial officers from private suits will be found in the 14th chapter of Cooley on Torts. See, also, the cases there cited, and, also, the article on " False Imprisonment," 7 Am. & Eng. Encyc. of Law, pp. 661, *et seq.*

While it may at first blush seem unjust to assert a rule so broad as to cover cases of alleged fraud, corruption or oppression, and may seem to give color to the suggestion that the rule was created by the courts as a refuge to protect them-

selves from the full measure of responsibility meted out to men generally, reflection will show that it is not only based upon almost innumerable precedents, running back to time immemorial, but that it is founded upon broad principles of right and the soundest public policy.

No man is fitted to act as judge if he has not the courage to act in accordance with conscientious convictions of right, and without fear of consequences to himself; learning, conscience and courage are all essential qualities for those whose duty it is to decide upon the rights of their fellows.

The student of English and American history will recall many instances where the judiciary has stood as the only barrier to protect society against oppression of rulers on one hand, or from the effects of hasty and ill-advised action, growing out of some wave of popular feeling or some flame of excited passion. It is absolutely essential, not only to the well-being of society, but to the preservation of our government in its integrity, that the independence of the judiciary be preserved.

By this is not meant that they should not be held responsible for official misconduct.

Our laws wisely provide for their punishment criminally for official malfeasance, and the Constitution makes provision for their impeachment and removal in a proper case. This, however, is a recognition of their responsibility to the public, to the State, and not to the individual.

The cases are few where the disappointed litigant does not feel that injustice has been done him. And, as has been well said by a learned author: " If civil actions could be maintained in such cases against the judge, because the losing party should see fit to allege in his complaint that the acts of the judge were done with partiality, or maliciously, or corruptly, the protection essential to judicial independence would be entirely swept away. Few persons, sufficiently irritated to institute an action against a judge for his judicial acts, would hesitate to ascribe any character to the acts which

State, *ex rel.* Egan, *v.* Wolever *et al.*

would be essential to the maintenance of the action. * ·* *
The civil responsibility of the judge would often be an in-
centive to dishonest instead of honest judgments, and would
invite him to consult public opinion and public prejudices,
when he ought to be wholly above and uninfluenced by them.
As every suit against him would be to some extent an ap-
peal to popular feeling, a judge, caring specially for his own
protection, rather than for the cause of justice, could not well
resist a leaning adverse to the parties against whom the pop-
ular passion or prejudice for the time being was running,
and he would thus become a persecutor in the cases when he
ought to be a protector, and might count with confidence on
escaping responsibility in the very cases in which he ought
to be punished. * * * Whenever, therefore, the
State confers judicial powers upon an individual, it confers
them with full immunity from private suits. In effect, the
State says to the officer that these duties are confided to his
judgment; that he is to exercise his judgment fully, freely,
and without favor, and he may exercise it without fear; that
the duties concern individuals, but they concern more espe-
cially the welfare of the State, and the peace and happiness
of society; that if he shall fail in the faithful discharge of
them he shall be called to account as a criminal; but that
in order that he may not be annoyed, disturbed, and impeded
in the performance of these high functions, a dissatisfied in-
dividual shall not be suffered to call in question his offi-
cial action in a suit for damages. This is what the State,
speaking by the mouth of the common law, says to the judicial
officer." Cooley on Torts, *supra.*

It is said, however, that while this may be the rule with
respect to courts of general jurisdiction, it is not the rule as
applied to courts of special, or limited, jurisdiction. A clear
distinction does exist in the application of the rule of judi-
cial immunity to the two classes of courts, and the mayor's
court being a court of special and limited jurisdiction it is
necessary to note the limits of that distinction. We will say,

however, in passing to the consideration of this question, that while we recognize a distinction in the application of the rule to the two classes of courts, we recognize no such distinction in the rule itself. On the contrary, where jurisdiction exists in the inferior court, the rule is the same. A distinction is also to be noted between acts which are judicial in their nature, and those of an administrative, or ministerial, character. The protection extends only to judicial decisions, or acts of a judicial character, and not to mere administrative acts.

The test by which the question of liability, or non-liability, is to be determined, seems to lie in the answer to this question : Was the act complained of an exercise of judicial authority, or was it non-judicial? As applied to acts which are judicial in their nature, the answer to this query depends upon the further question : Had the court jurisdiction in the given case ?

Where a court of limited jurisdiction has, in a given case, jurisdiction of the subject-matter, and of the persons interested, the same immunity is accorded to the judge, or magistrate, that is in any case accorded to the judge of a court of general jurisdiction. And here we would remark, that by jurisdiction of the subject-matter is not meant simple jurisdiction of the particular case then occupying the attention of the court, but jurisdiction of the class of cases to which the particular case belongs. *Jackson* v. *Smith,* 120 Ind. 520 (522) ; *Yates* v. *Lansing, supra.* In the latter case it is said that by subject-matter is meant the abstract thing, and not the particular case.

It is said that in courts of general jurisdiction, an action never lies against the judge because he has jurisdiction of all causes. In courts of limited jurisdiction it lies only when he exceeds that jurisdiction, and, therefore, is not in the exercise of his judicial authority. *Little* v. *Moore,* 4 N. J. L. 74 ; *Clark* v. *Holdridge,* 58 Barb. 61 ; *Dyer* v. *Smith,* 12 Conn. 384.

In the case of *Little* v. *Moore*, *supra*, it is said : " It may be laid down as a universal position, which admits of no exception, that for a mere error of judgment in the execution of his office, no action can be maintained against a judge of any court. With respect to special and limited jurisdictions, it is said, that if the judge shall exceed his powers, the whole proceeding is *coram non judice, and void;* and that all concerned in such void proceeding, as well the judge, as the ministerial officer, are liable in trespass ; but while within his jurisdiction, adjudicating upon matters lawfully submitted to him, how erroneous soever his opinions, he is not liable. In courts of general jurisdiction, an action never lies against the judge, because he has jurisdiction of all cases ; in courts of limited jurisdiction, it lies only when he exceeds that jurisdiction, and therefore is not in the exercise of his judicial authority. The principle, therefore, is the same in all courts."

The case of *Pratt* v. *Gardner*, 2 Cush. 63, was an action on the case in which it was alleged in the declaration that the defendant, who was a justice of the peace, wilfully and maliciously received a false and groundless complaint against the plaintiff for a criminal trespass, and, thereupon, wilfully and maliciously issued his warrant, upon which the plaintiff was arrested and carried before the defendant for trial, and was by him wilfully and maliciously tried and convicted without being allowed an opportunity to obtain witnesses and counsel ; that upon such conviction the defendant maliciously sentenced the defendant to pay a fine of two dollars and costs ; and that upon his refusing to pay the same, plaintiff was committed, by the order and warrant of the defendant, to the common jail, where he remained imprisoned for one day, until, to obtain his discharge therefrom, he was obliged to and did comply with the defendant's order to pay the fine and costs imposed upon him by the sentence. The court held that the action could not be maintained. Referring to the case of *Yates* v. *Lansing*, *supra*, and other cases

of similar tenor, and of the rule there laid down the court says: "These rules extend as well to a justice of the peace as to any other judicial officer, acting within his jurisdiction, in a judicial capacity."

Even in courts of general jurisdiction there may be a case where the judge would be liable to an action. In the case of *Bradley* v. *Fisher*, *supra*, a distinction is drawn between a case where the court has *exceeded* its jurisdiction and where it has acted *without jurisdiction*. The court says: "A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. When there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible." In such case the judge of the court of general jurisdiction occupies precisely the same position as the judge of limited jurisdiction who has exceeded his jurisdiction. Having no jurisdiction he is no judge, and this suggestion will aid us in determining when a judge of an inferior court can be said to have so *exceeded* his jurisdiction as to render him liable.

In our opinion there is such excess of jurisdiction only where the entire action of the court has been extra-jurisdictional, when he has assumed a jurisdiction which has never existed, and that there is no such excess of jurisdiction in a case where the magistrate, having jurisdiction, erroneously refuses to grant a change of venue to which the party asking it is entitled, and thereafter, assuming to retain jurisdiction of the cause, tries, condemns and punishes the party.

The position of appellant's counsel in this case is that appellant had taken all the necessary steps to entitle him to a change of venue, that such acts ousted the jurisdiction of the court, and that all the subsequent steps taken were *coram non judice*, and void, and were, within the meaning of the rule, in excess of the jurisdiction of the court, and that he

is therefore liable, because when he tried and condemned appellant he had no jurisdiction.    In this we think they are in error.

It must be conceded that if the necessary steps were all taken to entitle appellant to the change of venue, the action of the mayor in thereafter, over his objection, assuming to retain jurisdiction, and the resulting trial and condemnation, were *coram non judice,* and void.    *Shoemaker* v. *Smith,* 74 Ind. 71 ; *Goldsby* v. *State,* 18 Ind. 147 ; *Manly* v. *State,* 52 Ind. 215 ; *Duggins* v. *State,* 66 Ind. 350 ; *Krutz* v. *Howard,* 70 Ind. 174 ; *State* v. *Shaw,* 43 Ohio St. 324 ; *Center Tp.* v. *Board, etc.,* 110 Ind. 579 ; *Krutz* v. *Griffith,* 68 Ind. 444 ; *Burkett* v. *Holman,* 104 Ind. 6.

Yet this would not necessarily render the mayor liable to an action.  True, in that case he has *exceeded* his jurisdiction, but not, we think, in the sense in which that word is used in the cases.    At least not in the sense in which the use of the word is justified by principle.

We are inclined to think the use of the words " excess " and " exceeded," in that connection, unfortunate, as not expressing with accuracy the idea intended to be conveyed. A judge, even of a court of inferior and limited jurisdiction, only *exceeds* his jurisdiction, so that he is liable to an action, when he acts *without* jurisdiction—when he assumes a jurisdiction with which the law has never clothed him; or when, having had jurisdiction, he has lost it in some way, as by a discontinuance of the cause, and afterwards, without notice, assuming to act, as in the case of *Dyer* v. *Smith,* 12 Conn. 384; or when, having jurisdiction, he should grant a change of venue, and thereafter assume to act without consent of the parties.    Having jurisdiction, he does not lose it by the mere fact that an application for a change of venue is made. The application for a change of venue in itself calls for judicial action.    Ruling on such a motion is a judicial act. Having jurisdiction of the subject-matter and of the person of the defendant when the application is made, his decision

thereon is privileged to the same extent as would be the decision of a court of general jurisdiction on such a motion.

This means, of course, that whether he decides it right or wrong, he is protected without reference to the motive that may impel him to the decision. If he decides the motion wrong, and is protected therein, it will not do to say that the immunity ends with the decision of that single question, but it extends to such additional rulings and such additional action as necessarily or legitimately might follow if the decision was correct.

The conclusion we have reached renders it unnecessary to decide several other questions which are presented by the record and argued by counsel. We will, however, refer to some of them for the reason that they make more clear the correctness of our conclusion.

The affidavit first presented to the mayor was not sworn to, and appellant demanded that the mayor administer the oath. This the mayor declined to do, and counsel for the appellees seriously insist and argue that it was not his duty to do so. Without deciding this question, it is enough to say that the decision of such question by the mayor was necessary, and was clearly a judicial act. After the refusal by the mayor to administer the oath the appellant was sworn to the truth of the affidavit by a notary public, and renewed his motion. Applications for a change of venue from a mayor are governed by the law governing change of venue from justices of the peace. The statute relating to such change says " Changes of venue shall be granted whenever affidavit shall be made before the justice by either party," etc. Elliott's Supp., section 297.

Appellees insist that this requires that such affidavit must be made before the justice or mayor, and that an affidavit made before a notary public can not be recognized.

Like the preceding question, this again compelled a decision by the mayor, which was essentially judicial.

Again, the prosecution was in the name of the State of Indiana *v.* James Aikens. Appellant responded to this name and entered a plea of not guilty. The statute, section 1742, R. S. 1881, prescribes that " If a defendant be' accused by a wrong name, unless he declare his true name before pleading, he shall be proceeded against by the name in the indictment or information."

Without declaring his true name in any other way, appellant presented the affidavit hereinbefore set out. Appellees insist that the court could not recognize an application for a change of venue by " *Mike Egan* " in a prosecution against " *James Aikens*," and this question the mayor was compelled to decide, and such decision was judicial in its nature.

While not necessary to the decision of this case, it is right to say that in the opinion of this court the cases of *Dietrichs v. Schaw*, 43 Ind. 175; *Barkeloo v. Randall*, 4 Blackf. 476, and *Krutz v. Howard*, *supra*, in so far as they relate to questions herein considered, rest on questionable ground.

The court below did not err in sustaining a demurrer to the complaint.

Judgment affirmed with costs.

