## *Ex parte* EDWARD B. JUSTUS.

### No. A-234.   Opinion Filed October 25. 1909.

#### (104 Pac. 933.)

1.  **HABEAS CORPUS—Grounds of Relief.**   This court on habeas corpus will not look beyond the judgment and sentence of any court of competent jurisdiction as to mere irregularities of procedure, or errors in law on questions over which the court had jurisdiction.

2.  **COURTS—"Court of Competent Jurisdiction."**   A court of competent jurisdiction is one having power and authority of law at the time of acting to do the particular act.

3.  **HABEAS CORPUS—Remedy by Writ of Error or Appeal.**   The writ of habeas corpus cannot be used to perform the office of a writ of error or appeal, and should be limited to cases in which the judgment and sentence of the court attacked is clearly void.

4.  **HABEAS CORPUS—Grounds for Relief—Want of Authority.**   If the petitioner be imprisoned under a judgment of a court which had no authority to render the judgment complained of, then relief may be accorded by **habeas corpus.**

    (Syllabus by the Court.)

Original petition for *habeas corpus* by Edward B. Justus. Writ granted.

This is an original action in this court on petition for writ of *habeas corpus.* The petitioner is confined in the State Penitentiary at McAlester, Okla., under judgment and sentence issued out of the district court of Kay county, Okla., then Oklahoma Territory, September 30, 1898. That part of the petition necessary to be copied is as follows:

"That the said R. W. Dick, warden as aforesaid, restrains your petitioner by reason of a certain judgment and sentence issued out of the district court of Kay county, Okla. T., September 30, 1898, which proposes to adjudge your petitioner guilty of and to sentence him for the crime of murder, under which your petitioner was confined in the Kansas state penitentiary, at Lansing, Kan., and under the authority conferred by the law of Oklahoma approved April 26, 1905, which directed the removal of certain prisoners from Kansas to Oklahoma, was no authority for

removing your petitioner because he was not sentenced to either the Kansas state penitentiary at Lansing, Kan., or the territorial prison. That said district court of Kay county, territory of Oklahoma, was without jurisdiction to try, adjudge, and sentence your petitioner for the following reasons, to wit: Your petitioner was arrested in Kay county, Okla. T., May 24, 1898. On May 28th following the county attorney made the following affidavit: 'C. L. Pinkham, of lawful age and being first duly sworn, on his oath deposes and says that he is the county attorney of Kay county, Oklahoma Territory; that one Justus is now confined in the county jail of Kay county under the charge of murder, and your affiant has reason to believe, and does believe, that the said jail is insufficient in which to hold the said Edward B. Justus in the present state of public mind. [Signed] C. L. Pinkham, County Attorney.' And the following order was thereupon entered by the judge of the district court of said county: 'Now, on the 28th day of May, 1898, this case came on for hearing on the affidavit of the county attorney of Kay county, showing to the court that the said Edward B. Justus is charged with the crime of murder committed in said county and is now confined in Kay county jail, that said jail is insufficient for the safekeeping of said Justus, and that the public mind is in a more or less excited state. Wherefore the court, being duly advised in the premises, is of the opinion that the said Justus should be transported and kept in some other county in the territory. Wherefore it is ordered by the court that the sheriff of Kay county transport the said Edward B. Justus to the county jail of Logan county for safekeeping for a period of 90 days. At the expiration whereof he shall return the said Edward B. Justus to the county jail. [Signed] Bayard T. Hainer, Judge.' On the 12th day of September thereafter your petitioner was called to the bar of the district court of Kay county, and, before pleading to the indictment, filed the following affidavits: 'Comes Edward B. Justus, abovenamed defendant, who, being duly sworn, on his oath deposes and says that he cannot have a fair and impartial trial in the county of Kay, in said territory, for the reason that there is a prejudice against him existing in said county, that such prejudice was so strongly arrayed against him, said defendant, that it was necessary for the officials of said county to remove him from the body thereof to keep him safely from mob violence with which he was threatened pending investigation of the charge against him by the grand jury; that a conspiracy was formed to do him serious

injury, and there were serious threats made against him by the citizens of said county; that affiant believes that the same spirit now exists in said county. Wherefore he asks for a change of venue of said cause to some other county in the territory. [Signed] E. B. Justus.' 'Also personally appeared Andrew Jones and J. H. Helms, who, both being first duly sworn on their oaths, depose and say they are residents of said county and territory, and have heard read the above and foregoing affidavit of Edward B. Justus, defendant in the above cause, and know the contents thereof, and that the allegations contained therein are true. Affiants further depose and say that said defendant cannot have a fair and impartial trial in said county by reason of the facts stated in said defendant's affidavit, and that they have no interest in the results of the trial, but only desire that justice may be done the accused. [Signed] Andrew Jones. J. H. Helms.' All of the above affidavits set forth were duly and properly sworn to as the law requires, and certified copies thereof are attached hereto, marked, 'Exhibits—Affidavits.' Thereupon the county attorney filed the affidavits of 24 persons in opposition to said motion for a change of venue, and the court, after hearing said motion and affidavits, did overrule said motion, as follows: 'Now, on this 12th day of September, this case is called, and the defendant is ordered brought into court. Thereupon Ed. Justice, whose true name is Edward B. Justus, is produced in court in custody of the sheriff of Kay county. The territory is represented by C. L. Pinkham, county attorney, and the defendant is present in person and by C. W. Curran and A. A. Byers. Thereupon the defendant by his attorneys presents a motion for change of venue supported by the affidavits of two disinterested persons. And thereupon the county attorney of Kay county, on behalf of the territory of Oklahoma, presents the affidavits of 24 disinterested persons in opposition to said motion for a change of venue. The court, after hearing the said motion and affidavits and arguments of counsel, and being fully advised in the premises, overrules said motion for a change of venue to which ruling overruling said motion, the defendant at the time duly excepted and excepts. Thereupon the said defendant is remanded to the custody of the sheriff of Kay county,' which order was entered in Journal No. 4, at page 155, a certified copy whereof is hereto attached marked, 'Exhibit—Journal entry.' "

The petition further sets out the proceedings showing the

3 Cr.—8

defendant was tried and convicted and sentenced to imprisonment in the territorial penitentiary for the term of his natural life at hard labor; and, after setting out the necessary exhibits as to the record, says:

"Your petitioner says that said judgment and sentence and all other. proceedings in and orders made by the said district court of Kay county were null and void, which were made after your petitioner filed his motion and affidavit for a change of venue."

The petition concludes with the prayer that the petitioner be discharged from prison and restored to his liberty, or that, failing therein, he be remanded to the sheriff of Kay county, Okla. The petition is properly verified.

*Eubanks & Elder* and *Chas. T. Keller*, for petitioner, citing: *Jones v. Brown*, 54 Iowa, 74; *Reynolds v. Stockton*, 140 U. S. 254; *Moranetz v. Sun Ins. Office*, 96 Wis. 175; *Watkins & Co. v. Mullen*, 8 Kan. App. 705; *Reed v. City of Missotine*, 104 Iowa, 183; *State v. Kent* (N. D.) 67 N. W. 631; *Whittier v. Taylor*, 7 Ind. 110; *Raferty v. People*, 66 Ill. 118; *Allerton v. Eldridge*, 56 Iowa, 709; *Paul v. Ziebell* (Neb.) 61 N. W. 630; *In re White*, 37 Cal. 190; *Bennett v. State*, 3 Ind. 167; *Virginia v. Paul*, 148 U. S. 107; *Miskimins v. Shaver*, 8 Wyo. 982; *Brown on Jurisdiction*, secs. 25, 97; *Cook v. Baxter*, 27 Ark. 480; *Shannon v. Smith*, 31 Mich. 450; *Smith v. People*, 2 Colo. App. 99; *State v. Superior Court*, 5 Wash. 518; *State v. Evans*, 13 Mont. 239; *Hillegal v. Truman*, 60 Wis. 254; *State v. Wellner*, 7 N. D. 522; *State v. Shipman* (Mo.) 6 S. W. 97.

*Chas. West*, Atty Gen., *E. G. Spilman* and *Chas. L. Moore*, Assts. Atty Gen., and *O. L. Pinkham*, Ex-Co. Atty., for respondent. No copy of brief reached the reporter.

OWEN, JUDGE (after stating the facts as above). The case at bar is one of unusual history. At the time this petitioner was tried the territorial penitentiary was at Lansing, Kan. His case was appealed to the Supreme Court of Oklahoma Territory, and the appeal dismissed. After his appeal had been dismissed by the Supreme Court of the territory, and while in the territorial prison at Lansing, Kan., he applied to the Supreme Court of Kan-

sas for a writ of *habeas corpus* as reported in 65 Kan. 547, 70 Pac. 354. The writ was denied. The petitioner was under the authority conferred by the law of Oklahoma approved May 26, 1908 (Laws 1908, p. 264, c. 22), removed to the state penitentiary of Oklahoma at McAlester. In this proceeding we are asked to pass on the identical question presented on appeal to the Supreme Court of the territory of Oklahoma and to the Supreme Court of the state of Kansas on petition for writ of *habeas corpus.* It cannot be contended that the judgment of the Supreme Court of Kansas precludes this court from inquiring into the legality of the imprisonment. By the great preponderance of authority the principle of *res adjudicata,* where not otherwise provided by statute, has no application in *habeas corpus,* and a decision on one writ is no bar to proceedings on subsequent *habeas corpus* proceedings. *Ex parte Johnson,* 1 Okla. Cr. 414, 98 Pac. 461.

Neither is the decision of the Supreme Court of the territory of Oklahoma in dismissing the appeal conclusive on this court in the sense that would preclude this court from considering the petition as presented here.

This court on *habeas corpus* will not look beyond the judgment and sentence of any court of competent jurisdiction as to any mere irregularities of procedure or errors in law on questions over which the court had jurisdiction.

A judgment in its nature concludes the subject on which it is rendered, and pronounces the law of the case. The judgment of a court of record, whose jurisdiction is final, is as conclusive on all the world as the judgment of this court would be. It is as conclusive on this court as on other courts. It puts an end to inquiries concerning the fact by deciding it. But there is a very material difference between an irregularity in procedure that renders a judgment voidable and reversible on a writ of error or appeal, and acts which exceed the court's jurisdiction, or which deny to the defendant a constitutional right, and thereby render the judgment void.

While the writ of *habeas corpus* cannot be used to perform the office of a writ of error or appeal, and the remedy by *habeas*

*corpus* should be limited to cases in which the judgment or sentence attacked is clearly void by reason of its having been rendered without jurisdiction, or by reason of the court having exceeded its jurisdiction in the premises (*In re McNaught,* 1 Okla. Cr. 528, 99 Pac. 241), if the petitioner be imprisoned under a judgment of a court which had no jurisdiction of the person or the subject-matter or authority to render the judgment complained of, then relief may be accorded. This principle is announced by the great weight of authority, and has been repeatedly adhered to by the Supreme Court of the United States. *In re Lane,* 135 U. S. 443, 10 Sup. Ct. 760, 34 L. Ed. 219; *In re Frederich,* 149 U. S. 70, 13 Sup. Ct. 793, 37 L. Ed. 653; *Ex parte Tyler,* 149 U. S. 164, 13 Sup. Ct. 785, 37 L. Ed. 689; *In re Swan,* 150 U. S. 637, 14 Sup. Ct. 225, 37 L. Ed. 1207.

The statute in force at the time, and under which the petition for change of venue was filed, is as follows:

"A criminal action prosecuted by indictment or by information originally filed in the district court, may, at any time before the trial is begun, on the application of the defendant, be removed from the court and the county in which it is pending as follows: First. If the offense charged in the indictment be punishable with death or imprisonment in the territorial prison for life, if it be made to appear by the affidavit of the accused, and two disinterested persons, that a fair and impartial trial cannot be had in such county, a change must be granted." (Section 5427, Wilson's Rev. & Ann. St. 1903.)

It is conceded here that the petitioner complied with the requirements of this section. The trial court denied the change of venue. Was the court's action in denying the change of venue a mere irregularity in procedure, or did it render the action of the court thereafter illegal? Was it merely an error that would only be reversible on appeal or one that rendered subsequent proceedings void? Article 6 of the Constitution of the United States provides that, "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district," etc. This provision guarantees the right of an impartial jury.

Section 10 of the Organic Act of the territory of Oklahoma (Act May 2, 1890, c. 182, 26 Stat. 87), in full force and effect at the time this case was tried, in fixing the venue of cases both civil and criminal concludes with this language:

"But any case civil or criminal, may be removed, by change of venue, to another county."

This gives the defendant the right to a change of venue. Section 5427, above quoted, prescribes the method of securing the change, and thereby securing an impartial jury. When the trial court refused to grant the change, he deprived the defendant of a right guaranteed in the Constitution of the United States, and given in the Organic Act, which had the legal effect and force of a constitution, and was the same in effect as denying the defend-ant a constitutional right.

In the case of *Ex parte Watkins,* 3 Pet. 193, 7 L. Ed. 650, and *Ex parte Parks,* 93 U. S. 18, 23 L. Ed. 787, and a number of subsequent cases, the Supreme Court of the United States refused to look beyond the judgment and sentence of a court of record, holding that it was only where the proceedings below were entirely void, either for want of jurisdiction or other cause, that relief would be given by *habeas corpus.* The same court in the case of *Hans Nielsen,* reported in 131 U. S. 176, 9 Sup. Ct. 672, 33 L. Ed. 118, announced the doctrine that the petitioner should be released on *habeas corpus* if the record disclosed that he had, on the trial in the lower court, been denied a constitutional right. The syllabus of the case is as follows:

"Where a court is without authority to pass a particular sentence, such sentence is void, and the defendant imprisoned under it may be discharged on *habeas corpus.* A judgment in a criminal case denying to the prisoner a constitutional right, or inflicting an unconstitutional penalty, is void, and he may be discharged on *habeas corpus.*"

In the opinion rendered by Mr. Justice Bradley we find the following language, beginning on page 182 of 131 U. S., page 674 of 9 Sup. Ct. (33 L. Ed. 118):

"The first question to be considered is, whether, if the petitioner's position was true that he had been convicted twice for the

same offense, and the court erred in its decision, he could have relief by *habeas corpus?*

"The objection to the remedy by *habeas corpus*, of course, would be that there was in force a regular judgment of conviction, which could not be questioned collaterally, as it would have to be on *habeas corpus*. But there are exceptions to this rule which have more than once been acted upon by this court. It is firmly established that if the court which renders a judgment has not jurisdiction to render it, either because the proceedings or the law under which they are taken are unconstitutional, or for any other reason, the judgment is void, and may be questioned collaterally, and a defendant who is imprisoned under and by virtue of it may be discharged from custody on *habeas corpus*. This was so decided in the cases of *Ex parte Lange,* 18 Wall. 163, 21 L. Ed. 872, and *Ex parte Siebold,* 100 U. S. 371, 25 L. Ed. 717, and in several other cases referred to therein. In the case of *In re Snow,* 120 U. S. 274, 7 Sup. Ct. 556, 30 L. Ed. 658, we held that only one indictment and conviction of the crime of unlawful cohabitation, under the act of 1882, could be had for the time preceding the filing of the indictment, because the crime was a continuous one, and was but a single crime until prosecuted; that a second conviction and punishment of the same crime, for any part of said period, was an excess of authority on the part of the district court of Utah; and that a *habeas corpus* would lie for the discharge of the defendant imprisoned on such conviction. In that case the *habeas corpus* was applied for at a term subsequent to that which the judgment was rendered; but we did not regard this circumstance as sufficient to prevent the prisoner from having his remedy by that writ.

"It is true that in the case of Snow we laid emphasis on the fact that the double conviction for the same offense appeared on the face of the judgment; but, if it appears in the indictment or anywhere else in the record (of which the judgment is only a part), it is sufficient. In the present case it appeared on the record in the plea of *autrefois convict,* which was admitted to be true by the demurrer of the government. We think that this was sufficient. It was laid down by this court in *Re Coy,* 127 U. S. 731, 758, 8 Sup. Ct. 1263, 32 L. Ed. 274, that the power of Congress to pass a statute under which a prisoner is held in custody may be inquired into under a writ of *habeas corpus* as affecting the jurisdiction of the court which ordered his imprisonment; and the court, speaking by Mr. Justice Miller, adds: 'And, if

their want of power appears on the face of the record of his condemnation, whether in the indictment or elsewhere, the court which has authority to issue the writ is bound to release him'— referring to *Ex parte Siebold.* 100 U. S. 371, 25 L. Ed. 717.

"In the present case, it is true, the ground for the *habeas corpus* was, not the invalidity of an act of Congress under which the defendant was indicted, but a second prosecution and trial for the same offense contrary to an express provision of the Constitution. In other words, a constitutional immunity of the defendant was violated by the second trial and judgment. It is difficult to see why a conviction and punishment under an unconstitutional law is more violative of a person's constitutional rights than an unconstitutional conviction and punishment under a valid law. In the first case, it is true the court has no authority to take cognizance of the case; but in the other it has no authority to render judgment against the defendant. This was the case in *Ex parte Lange,* where the court had authority to hear and determine the case, but we held that it had no authority to give the judgment it did. It was the same in the case of Snow. The court had authority over the case, but we held that it had no authority to give judgment against the prisoner. He was protected by a constitutional provision, securing to him a fundamental right. It was not a case of mere error in law, but a case of denying to a person a constitutional right. And, where such a case appears on the record, the party is entitled to be discharged from imprisonment. The distinction between the case of a mere error in law, and of one in which the judgment is void, is pointed out in *Ex parte Siebold,* 100 U. S. 371, 375, 25 L. Ed. 717, and is illustrated by the case of *Ex parte Parks,* 93 U. S. 18, 23 L. Ed. 787, as compared with the cases of Lange and Snow. In the case of Parks there was an alleged misconstruction of a statute. We held that to be a mere error in law; the court having jurisdiction of the case. In the cases of Lange and Snow there was a denial or invasion of a constitutional right. A party is entitled to a *habeas corpus,* not merely where the court is without jurisdiction of the cause, but where it has no constitutional authority or power to condemn the prisoner. As said by Chief Baron Gilbert, in a passage quoted in *Ex parte Parks,* 93 U. S. 18, 22, 23 L. Ed. 787: 'If the commitment be against law, as being made by one who had no jurisdiction of the cause, or for a matter for which by law no man ought to be punished, the court are to discharge.' This was said in reference to cases which

had gone to conviction and sentence. Lord Hale laid down the same doctrine in almost the same words. 2 Hale's Pleas of the Crown, 144. And why should not such a rule prevail *in favorem libertatis?* If we have seemed to hold the contrary in any case, it has been from inadvertence. The law could hardly be stated with more categorical accuracy than it is in the opening sentence of *Ex parte Wilson,* 114 U. S. 417, 420, 5 Sup. Ct. 935, 936, 29 L. Ed. 89, where Mr. Justice Gray, speaking for the court, said: 'It is well settled by a series of decisions that this court, having no jurisdiction of criminal cases by writ of error or appeal, cannot discharge on *habeas corpus* a person imprisoned under the sentence of a circuit or district court in a criminal case, unless the sentence exceeds the jurisdiction of that court, or there is no authority to hold him under the sentence.' This proposition, it is true, relates to the power of this court to discharge on *habeas corpus* persons sentenced by the circuit and district courts; but, with regard to the power of discharging on *habeas corpus,* it is generally true that, after the conviction and sentence, the writ only lies when the sentence exceeds the jurisdiction of the court, or there is no authority to hold the defendant under it. In the present case the sentence given was beyond the jurisdiction of the court, because it was against an express provision of the Constitution, which bounds and limits all jurisdiction."

In the case of *Ex parte Bain,* 121 U. S., beginning at page 1, 7 Sup. St. 781, 30 L. Ed. 849, a demurrer was interposed to the indictment, and the court permitted the United States attorney to strike out certain words in the indictment, holding that they were surplusage. After conviction, the defendant applied to the Supreme Court of the United States for a writ of *habeas corpus,.* alleging that the judgment and sentence were void, for the reason that he was tried without a proper indictment. In delivering the opinion the court used the following language:

"It only remains to consider whether this change in the indictment deprived the court of the power of proceeding to try the petitioner and sentence him to the imprisonment provided for in the statute. We have no difficulty in holding that the indictment on which he was tried was no indictment of a grand jury. The decisions which we have already referred to, as well as sound principle, require us to hold that, after the indictment was changed, it was no longer the indictment of the grand jury who presented

it. Any other doctrine would place the rights of the citizen which were intended to be protected by the constitutional provision at the mercy or control of the court or prosecuting attorney; for, if it be once held that changes can be made by the consent or the order of the court in the body of the indictment as presented by the grand jury, and the prisoner can be called upon to answer to the indictment, as thus changed, the restriction which the Constitution places upon the power of the court in regard to the prerequisite of an indictment in reality no longer exists. It is of no avail under such circumstances to say that the court still has jurisdiction of the person and of the crime; for, though it has possession of the person, and would have jurisdiction of the crime, if it were properly presented by indictment, the jurisdiction of the offense is gone, and the court has no right to proceed any further in the progress of the case for want of an indictment. If there is nothing before the court which the prisoner, in the language of the Constitution, can be 'held to answer,' he is then entitled to be discharged so far as the offense originally presented to the court by the indictment is concerned. The power of the court to proceed to try the prisoner is as much arrested as if the indictment had been dismissed or a *nolle prosequi* had been entered. There was nothing before the court on which it could hear evidence or pronounce sentence. The case comes within the principles laid down by this court in *Ex parte Lange,* 18 Wall. 163, 21 L. Ed. 872; *Ex parte Parks,* 93 U. S. 18, 23 L. Ed. 787; *Ex parte Wilson,* 114 U. S. 417, 5 Sup. Ct. 935, 29 L. Ed. 89, and other cases."

While the rule is settled by the Supreme Court of the United States that a writ of *habeas corpus* cannot be used to perform the office of a writ of error or appeal, and that the court will not look beyond the judgment and sentence to correct mere errors in law, yet a petitioner will be released on *habeas corpus* if it appears satisfactorily to the court that he has been denied a constitutional right, or that the court has exceeded its jurisdiction.

Brown on Jurisdiction (2d Ed.) § 97, announces the same rule in this language:

"The refusal of the court to grant each of the rights above enumerated, or all of them [referring to rights granted by the Constitution], seems to go to the jurisdiction; and, if the court has jurisdiction to try the action, it seems to lose jurisdiction

once acquired by a disobedience of the mandates of the Constitution; or, rather, the trial ceases to be a legal trial by a deviation from this course.    Therefore, when any constitutional right or immunity of a person is violated, the judgment of the court is void."

Again, in section 110, the author uses the following language:

"The three essential elements necessary to render the conviction valid:    These are that the court must have jurisdiction over the subject-matter, the person of the defendant, and authority to render the particular judgment.    If either of these elements are lacking, the judgment is fatally defective.    Where these elements exists, the judgment of the court is final and conclusive as against the world, and errors in ruling on motions, demurrers, the reception or exclusion of evidence, or in the determination of the facts by the jury cannot be tried or reviewed by the writ of *habeas corpus*.    No court can render a more binding judgment.    No court can look behind it.    If it be a nullity, the officer obeying it becomes liable for false imprisonment.    The court in *habeas corpus* will not look beyond the judgment unless the record discloses some fact that destroys the jurisdiction under the law or that operates directly on the judgment itself."

The case of *State v. Shipman,* 93 Mo. 147, 6 S. W. 97, is one where the defendant filed petition for change of venue under a statute very similar to the sections of our statute above quoted. The court overruled the motion, and the Supreme Court in passing on the question used the following language:

"Upon the making and filing of said affidavits and application the presiding judge has no power or authority to act in the cause, except to make the order contemplated in section 1878. After that his subsequent acts in the case were unauthorized, invalid, and without any binding force, as against this defendant."

In the case of *State v. Wolever,* 127 Ind. 306, 26 N. E. 762, in discussing the effect of the judgment after a petition for a change of venue had been overruled, the Supreme Court of Indiana said:

"It must be conceded that, if the necessary steps were all taken to entitle appellant to the change of venue, the action of the mayor in thereafter, over his objection, assuming to retain

jurisdiction, and the resulting trial and condemnation, were *coram non judice,* and void "—citing a great number of authorities.

In the case of *Ex parte Lange,* 18 Wall. 166 (21 L. Ed. 872), *supra,* the court used the following language:

"Disclaiming any assertion of a general power of. review over the judgments of the inferior courts in criminal cases, by the use of the writ of *habeas corpus* or otherwise, we proceed to examine the case as disclosed by the record of the circuit court and the return of the marshal, in whose custody the prisoner is found, to ascertain whether it shows that the court below had any power to render the judgment by which the prisoner is held."

In the case of *Ex parte Siebold.* 100 U. S. 371, 25 L. Ed. 717, *supra,* the court, in discussing the office of the writ of *habeas corpus,* used this language:

"It cannot be used as a mere writ of error. Mere error in the judgment or proceedings, under and by virtue of which a party is imprisoned, constitutes no ground for the issue of the writ. Hence, upon a return to a *habeas corpus* that the prisoner is detained under a conviction and sentence by a court having jurisdiction of the cause, the general rule is that he will be instantly remanded. * * * but the general rule is that a conviction and sentence by a court of competent jurisdiction is lawful cause of imprisonment, and no relief can be given by *habeas corpus.* The only ground on which this court or any court without some special statute authorizing it will give relief on *habeas corpus* to a prisoner under conviction and sentence of another court is the want of jurisdiction in such court over the person or the cause, or some other matter rendering its proceedings void. * * *. But personal liberty is of so great moment in the eye of the law that the judgment of an inferior court affecting it is not deemed so conclusive, but that, as we have seen, the question of the court's authority to try and imprison the party may be reviewed on *habeas corpus* by a superior court or judge having authority to award the writ."

Our statute on *habeas corpus* (section 4856, Wilson's Rev. & Ann. St. 1903) is as follows:

"Every person restrained of his liberty, under any pretense whatever, may prosecute a writ of *habeas corpus* to inquire into the cause of the restraint, and shall be delivered therefrom when illegal."

This section clearly makes it the duty of this court to discharge the petitioner from imprisonment if the imprisonment is illegal.

Section 4867, Wilson's Rev. & Ann. St. 1903, is as follows:

"No court or judge shall inquire into the legality of any judgment or process, whereby the party is in custody, or discharge him when the term of commitment has not expired in either of the cases following: First, upon process issued by any court or judge of the United States, or where such court or judge has exclusive jurisdiction; or, second, upon any process issued on any final judgment of a court of competent jurisdiction.  *  *  * "

Construing these two sections together, it is necessary to determine what is meant by court of "competent" jurisdiction. The first section quoted makes it our duty to release from illegal imprisonment. The last section provides that we cannot release from the final judgment of a court of "competent" jurisdiction. If the words "competent jurisdiction" as used here mean a court that has jurisdiction of a person and subject-matter, then we are precluded from discharging the petitioner in this case. This section was construed by the Supreme Court of the territory of Oklahoma in the case of *In re Patswald,* reported in 5 Okla. 789, 50 Pac. 139. The court there held a court of "competent" jurisdiction to be one having power and authority of law at the time of acting to do the particular act. The third syllabus is as follows:

"*Habeas Corpus* Act—Construction of. The provisions of the *habeas corpus* act of this territory (section 4578, St. 1893), excluding from its benefits persons committed or detained by virtue of any process issued on any final judgment of a 'court of competent jurisdiction,' only applies when the tribunal had jurisdiction to render the particular judgment. A court of 'competent' jurisdiction is one having power and authority of law at the time of acting to do the particular act. The prohibition contained in said section, forbidding inquiry into the legality of any process or judgment specified in the provision above referred to, does not take from the court or officer having jurisdiction of the writ the power, or relieve from the duty of determining whether the judgment or process emanated from a court of competent jurisdiction to issue the process or render the judgment."

Judge Tarsney, speaking for the court, used the following language:

"If the process is valid on its face, it will be deemed *prima facie* legal, and the prisoner must assume the burden of impeaching its validity by showing a want of jurisdiction. Error, irregularity, or want of form is no objection; nor is any defect which may be amended or remedied by the court from which it issued. If there was no legal power to render the judgment or decree, or issue the process, there was no competent court, and consequently no judgment or process. All is *coram non judice* and void. *People v. McLeod,* 3 Hill (N. Y.) 659, 661, 665 and note; *In re Newton,* 16 C. B. 97.

"When a prisoner is held under a judgment of a court made without authority of law, the proper tribunal will, upon *habeas corpus,* look into the record so far as to ascertain this fact, and, if it be found to be so, will discharge the prisoner; and it is no answer to say that the court had jurisdiction of the person and of the offense. It by no means follows that these two facts make valid, however erroneous it may be, any judgment the court may render in such a case. *Ex parte Lange,* 18 Wall. 163, 21 L. Ed. 872. A proceeding defective for irregularity and one void for illegality may be reversed upon error or certiorari; but it is the latter defect only which gives authority to discharge on *habeas corpus.* Hurd on *Habeas Corpus,* 333. Illegality is properly predicable of radical defects only, and signifies that which is contrary to the principles of law as distinguished from mere rules of procedure. Tidd's Practice, 435. The inquiry is necessarily in every case whether the process is void, and the officer or court having jurisdiction of the writ must pass upon it. If a process, good in form, issued upon a judgment of a court having jurisdiction, either general or limited, must in all cases be assumed to be valid until the judgment be reversed upon error, the remedy by *habeas corpus* will be but of little value. *People ex rel. Tweed v. Lipscomb,* 60 N. Y. 559, 19 Am. Rep. 211. It matters not what the general powers and jurisdiction of a court may be, if it acts without authority in the particular case its judgments and orders are mere nullities—not voidable, but simply void—protecting no one acting under them, and constituting no hindrance to the prosecution of any right. *Elliott v. Peirsol,* 1 Pet. 328, 7 L. Ed. 164.

"There is no question but that at the common law and in the absence of a statute illegalities which make void a judgment in a

criminal action, no ·matter by what court such judgment may have been rendered, may be inquired into on *habeas corpus,* and, if the judgment is found to be void, the prisoner may be discharged. Does our statute change this rule of the common law, and take away this right of inquiry? If such were the intended effect of the statute, our answer would be: The power is not in the Legislature to take away this right. Relief from illegal imprisonment by means of this remedial writ is not the creature of any statute. The right to be discharged from illegal imprisonment is not derived from the famous statute of Charles II of England (31 Car. II, c. 2), nor from the later act of 56 Geo. III, nor from any statute of this territory. It was in use before *Magna Charta,* and came to us an inheritance from the mother country, and exists as a part of the common law of this territory, and it is made a part of our Constitution that no person shall be deprived of his liberty 'without due process of law.' Const. Amend. art. 5.

"This writ cannot be abrogated or its efficiency curtailed by· legislative action. Cases within the relief afforded by it at common law cannot, until the people voluntarily surrender the right to this, the greatest of all writs, by an amendment of the organic law, be placed beyond its reach and remedial action. Its privileges cannot be even temporarily suspended except.for the safety of the state ·in cases of rebellion and invasion. Const. art. 1, § 9. That provision of the· Constitution is a guaranty that the right of the writ of *habeas corpus* should· remain as it existed at the common law, and should not be curtailed by legislative enactment or by subtle and metaphysical judicial interpretation, and Legislatures can no more prevent its application to cases where it would have been applicable at common law than they can abrogate the right of trial by jury. Nor· do we think that it was intended by our Legislature to curtail the privileges of this writ. Many of the states of the Union have statutes substantially if not identically like ours, and in none of these states save one, as we are advised, has the ·construction contended for by counsel for respondent in this case been placed upon such statute. New· York, Missouri, and Kansas have statutes identical with ours. In Kansas and Missouri, notwithstanding the statute, it is held that, where a prisoner has been committed· by a court having absolutely no jurisdiction, the validity of the commitment may be inquired into. *In re Petty,* 22 Kan. 477; *Ex parte Snyder,* 64 Mo. 58. In New York it is held that the statute is in harmony with the common law, and takes away no right or jurisdiction to inquire if the

judgment is void. *People ex rel. Tweed v. Lipscomb*, 60 N. Y. 559, 19 Am. Rep. 211."

We think this is the proper construction of this statute, and that we not only have the power, but it is our duty, to discharge the petitioner where the imprisonment is illegal. And following the rule as announced by the Supreme Court of the United States in *Ex parte Bain*, 121 U. S. 1, 7 Sup. Ct. 781, 30 L. Ed. 849, and *Ex parte Hans Nielsen*, 131 U S. 176, 9 Sup. Ct. 672, 33 L. Ed. 118, *supra*, we are driven to the conclusion that the judgment of the court in sentencing the petitioner to imprisonment for life was void, for the reason that he had been denied the right of change of venue vouchsafed to him in the Organic Act of the territory of Oklahoma, and that his imprisonment is therefore illegal.

It is therefore ordered that the petitioner be discharged from said judgment and commitment, and that he be remanded to the custody of the sheriff of Kay county, Okla., and that a mandate issue to the district court of Kay county, directing it to proceed with the case in accordance with the views herein expressed.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.